## No. 10,619.

### IRWIN v. LOWE ET AL.

RAILROADS.—*Aid.*—*Election and Returns.*—*Informality.*—Mere informalities in the returns of an election concerning aid to a railroad, which can not possibly prejudice any substantial right, or a failure to conform to any requirement of the statute which is directory only, or an error which is clearly clerical, are not sufficient to defeat the appropriation voted.

SAME.—*Forfeiture.*— *Conditions.*— *County Commissioners.*—When a petition for aid is upon conditions, expressed in the petition, that the road shall be completed through the township, and a depot erected thereon, by a day named, a failure to perform the conditions forfeits the aid voted; under the provisions of the statute, R. S. 1881, sections 4045 and 4062; and, after such forfeiture, the aid so voted will be no obstacle to voting aid to another railroad upon proper petition under section 4045.

SAME.—*Cities.*—*Constitutional Law.*—It is no impediment to granting aid by a township that it includes a city which is in debt to the extent permitted by the constitution.

SAME.—*Appeal.*—*Practice.*—On appeal from an order of the county commissioners, levying a tax to meet an appropriation in aid of a railroad, the questions to be tried are those only which have been put in issue before the board.

BRIEF.—Merely calling the attention of the Supreme Court to a question, and asking its judgment upon it, is no such argument of the question as, under the rules of the court, will secure its decision thereon.

From the Bartholomew Circuit Court.

*S. Stansifer* and *W. D. Stansifer*, for appellant.

*F. T. Hord, W. B. Hord* and *N. R. Keyes*, for appellees.

ZOLLARS, J.—This case was instituted before the board of commissioners of Bartholomew county, to contest and over-throw an appropriation of $70,000, by Columbus township in said county, to aid in the construction of The Columbus, Hope and Greensburg Railroad. Appellees were the petitioners for the appropriation. The material facts, as shown by the record, are as follows: At a special session of the board of commissioners of Bartholomew county in February, 1880, a petition, signed by the requisite number of qualified voters and freeholders of Columbus township, was presented,

asking for an appropriation of $69,714.96, by said township, to the Evansville, Seymour and Bellefontaine Railway Company, and that the stock of said company to that amount be taken. The closing portion of the petition is as follows:

"And your petitioners further ask that if said appropriation and subscription as prayed herein is granted in all respects, that the same be on the following terms and conditions, to wit: That said company shall be required to construct and complete a standard gauge railway through said Columbus township, on or before the 1st day of June, 1882, and shall erect a depot within the corporate limits of the city of Columbus, and shall pass a train of cars over said railway, within said Columbus township, before said 1st day of June, 1882, and before any part of said money shall be so appropriated and subscribed to the stock of said railway company, and your petitioners will ever pray."

Proper proceedings were had upon this petition, proper notices given, and an election was held in the township on the 3d day of April, 1880, which resulted in favor of the appropriation. A proper return of the election was made, but the board of commissioners did not make a levy of a special tax at the ensuing June session, 1880. At the June session 1881, on the 16th day of June, a tax of one per centum, on the taxable property of the township, was levied for the year 1881, and was properly put upon the duplicate of that year by the auditor of the county, to be collected and applied for the purpose of meeting the appropriation as prayed for and voted.

The railroad company has acquired no right of way in the township or county, has not constructed, or made any efforts to construct, any part of its road in the township, county or State; nor has it erected a depot within the corporate limits of the city of Columbus. On the 13th day of January, 1882, the board of commissioners of the county, in lawful session, made an order directing the auditor and treasurer of the county to suspend the collection of the tax so levied until further orders from the board. At the June session, 1882, of the

board, the railroad company filed a petition with the board of commissioners, recognizing the conditions upon which the appropriation was voted, admitting its inability to comply with such conditions, and asking that the time be extended for one year.    Upon the filing of this petition, the board made an order reciting the conditions, and the failure of the railroad company to comply with them, and that it had thereby forfeited all right to the appropriation so voted, and that the time should not be extended.    This order has not been appealed from.    At the March session, 1882, of the board, a properly drawn and signed petition was presented to the board of commissioners of Bartholomew county, asking for an appropriation of $70,000 by Columbus township, in said county, to aid in the construction of the Columbus, Hope and Greensburg Railroad, and the taking of that amount of the stock of said company.    An election was ordered by the board, proper notices were afterwards given, and the election was held on the 22d day of April, 1882.    The notices stated the object of the election, as stated in the petition and order.    At this time, the township was divided into the following voting precincts, viz.:  Northeast precinct, northwest precinct, south precinct, east city precinct and west city precinct.    The division of the township into precincts, as made by the board of commissioners, shows that the court-house, in the city of Columbus, is the voting place of the northwest precinct, and is in that precinct.    The poll-book at the east city precinct has the following heading:  "A poll-book of an election held at east city precinct, in city of Columbus, in Bartholomew county, and State of Indiana, April 22d, 1882, for the purpose of voting aid for the C., H. & G. Railroad appropriation."

The certificate of the board of judges is as follows:

"THE STATE OF INDIANA, BARTHOLOMEW COUNTY:

"We, the undersigned board of judges of an election, held at east city precinct, in Columbus township, in Bartholomew county, and State of Indiana, on the 22d day of April, 1882, for the purpose of voting for an appropriation for the Columbus,

Hope and Greensburg Railroad, certify that the following votes were cast:

" JAMES HOFER, Inspector.  |  HENRY KOBBE, } Judges.
" THOS. F. WARNER, Clerk.  |  L. G. REDMAN, }

"For appropriation . . . . . . . . . . . . . 220 votes.
"Against appropriation . . . . . . . . . . . 57 votes."

Following the evidence in relation to the east city precinct, *supra*, it is stated in the bill of exceptions that appellees introduced in evidence the poll-books and certificates returned to the auditor's office of Bartholomew county, and on file therein, of the northwest precinct, the south precinct, the northeast precinct, and the west city precinct, all in Columbus township, being all of the voting precincts in said township, of the vote taken on the appropriation on the 22d day of April, 1882.

Here follows the poll-books, the votes and certificates of the votes in the south precinct, the northeast precinct, the west city precinct, and the poll-book and certificate of an election held at the court-house in precinct called number one.

The poll-book and certificate for the south precinct show an election for the purpose of voting for and against "the railroad appropriation." The name of the railroad company is not given. In the heading of the poll-book for the northeast precinct, it is stated that the election was held for the purpose of voting for the appropriation of two per cent. tax, of the taxable property of the precinct, for the construction of the Columbus, Hope and Greensburg Railroad. In the certificate of the board of judges, the same language is used.

In the heading of the poll-book for the west city precinct, it is stated that the election was held for the purpose of voting for or against constructing a railroad from Columbus to Greensburg, Decatur county, Indiana, "appropriating $70,-000 for said purpose, or against said appropriation." In the certificate of the board of judges, it is stated that the election was held "for the purpose of voting for the railroad appropriation, and against the railroad appropriation."

On the 27th day of April, the board of canvassers met, canvassed the vote of the township, and made the proper return, which states correctly each of the precincts in the township by name, and the number of votes in each, for and against the appropriation, and shows a majority of 292 votes in the township in favor of the appropriation.

The appropriation of $70,000 did not exceed two per centum of the taxable property of the township on the tax duplicate for the year 1881, and $35,000 did not exceed one per centum of the taxable property on the duplicate for the year 1882. At the June session, 1882, of the board of commissioners, appellee Lowe, one of the original petitioners, appeared before the board, and, upon written application, asked that a special tax be levied to meet the appropriation so voted.

At the same time appellant, a taxpayer of the township, also appeared before the board, and filed written objections to such levy, and asked that the election be declared illegal and void. These written objections were in three specifications, or paragraphs. The board dismissed the objections, and made an order that one-half of the appropriation, $35,000, should be levied and placed upon the duplicate of 1882, and the balance upon the duplicate of 1883. From this order appellant appealed to the circuit court. In that court, the case was ordered docketed, with appellant as plaintiff, and appellees, who were the petitioners for the appropriation, as defendants. The written objections filed in the commissioners' court were treated as in the case, and were demurred to by appellees. The demurrer was sustained to the first and third specifications, or paragraphs, and overruled as to the second. To this an answer in two paragraphs was filed, and; after demurrer overruled to the second paragraph, the cause was put at issue, by a reply of general denial. Upon the trial by the court, the facts already stated were established by the evidence. The court found for appellees, and, after motion for a new trial overruled, a judgment was rendered " that the levy made by the board of commissioners be and the same is

hereby confirmed, and that a tax of one-half of said appro-
priation, so asked as aforesaid, to wit, the sum of $35,000, be
and the same is hereby levied upon the real and personal
property in said township, to be collected *pro rata* upon the
same, and the auditor of Bartholomew county is ordered and
directed to assess and apportion the same against and upon
the tax duplicate, as required by law." To this judgment,
especially so much of it as orders a levy, appellant excepted.
From this judgment appellant prosecutes this appeal. In
this court errors are assigned upon the rulings on demurrers,
the motion for a new trial, and the rendition of the judgment.

The third paragraph of the objections was intended to chal-
lenge the regularity and validity of the election, on account
of irregularities in poll-books, certificates, etc. All of the
material questions raised by that paragraph are presented by
the evidence and the motion for a new trial. Does the record
present such irregularities in the election as renders the elec-
tion void? The informalities and irregularities urged by
counsel for appellant are apparent from what has been stated
in relation to the election in the several precincts. Counsel
urge some irregularities which do not exist in fact.

The irregularities in the east city precinct, which counsel
claim rendered the election invalid, are, that in the heading of
the poll-book the railroad is named as the C., H. & G. Rail-
road, and that the number of votes follows the signatures of
the election officers, and is given in figures and not written
out in words.

It will be noticed, upon examination, that the correct and
full name of the railroad is given in the certificate. It is ap-
parent that the election board and voters knew for what rail-
road the aid was voted. They were informed of this by the
notice given of the election. For this reason the law requires
that the ballots cast for the appropriation shall have upon
them the words simply "for the appropriation," and those cast
against it shall have upon them the words "against the ap-

propriation." The certificate would be more formal, and possibly better, if the number of votes cast for and against the appropriation preceded the names of the election officers; but this informality is simply an informality that does not affect substantial rights or cast a doubt upon the question of the number of votes actually cast for and against the appropriation. Section 4051, R. S. 1881, requires that the number of votes shall be stated in words, but this is directory simply. Many similar statutes have been held directory. See *Hopper* v. *Lucas*, 86 Ind. 43.

The irregularity in the south precinct is, that, in the poll-book and certificate, the name of the railroad company is not given. The statement is that the election was held for the purpose of voting for and against *the* railroad appropriation. The name of the railroad company for which aid was being voted was known by the voters and election officers. There was no election on that day to vote aid to any railroad company other than the one named in the notice. Like irregularities are apparent in other precincts, but what we have said will apply to them, and they need not be further noticed. In one of the poll-books and the certificate, it is stated that the election was held at the court-house, in precinct number one. The division of the township into voting precincts shows that the court-house is in, and is the voting place of, the northwest precinct. The board of canvassers name the northwest precinct, and make no mention of "precinct number one." It is very apparent that the naming of the precinct on the poll-book as number one is a mere clerical mistake, and that the votes stated in the certificate are those cast in the northwest precinct. The statute requires that the election for such an appropriation, and the manner of certifying the votes, etc., shall be conducted as nearly as may be in the manner provided by law for conducting general elections, etc. Section 4048, R. S. 1881. While it is true that statutes, which enable the majority to coerce the minority into the payment of taxes to meet such an appropriation, should be strictly

construed, this rule does not require that such appropriation shall be overthrown upon technical irregularities that do not affect substantial rights.

If the election in a case like this is to be governed by the law in relation to general elections, it would seem to follow that technical irregularities, which will not overthrow the result in one case, will not in the other. The irregularities urged in this case are not such, we think, as should be allowed to overthrow the election.

No charge is made in the written objections, or in argument, that the election was not fairly and intelligently conducted, or that the appropriation was not carried by a majority of the votes cast. Upon the question of such irregularities, see section 4757, R. S. 1881; *Lafayette, etc., R. R. Co.* v. *Geiger,* 34 Ind. 185; *Mustard* v. *Hoppess,* 69 Ind. 324; *Bittinger* v. *Bell,* 65 Ind. 445; *Faris* v. *Reynolds,* 70 Ind. 359; *Gass* v. *State, ex rel.,* 34 Ind. 425; *Dobyns* v. *Weadon,* 50 Ind. 298.

As we have before said, the issue for trial was made upon the second paragraph of the objections. This paragraph sets up the appropriation voted to the Evansville, Seymour and Bellefontaine Railroad Company on the 3d day of April, 1880, and the levy of the tax to meet it, as shown by the record, in June, 1881. There is an averment in this paragraph, that the amount voted to the Evansville, Seymour and Bellefontaine Railroad Company equalled two per centum of the taxable property of the township, as shown upon the tax duplicate for the year 1879. There is no averment as to the amount of the taxable property of the township for the years subsequent to that. The position of counsel for appellant is, that the appropriation voted to the Evansville, Seymour and Bellefontaine Railroad Company equalled two per centum of the taxable property of the township, and that the power to make further appropriation was exhausted, until the collection of tax to meet that appropriation; that as the tax was levied on the 16th day of June, at the June session, 1881, the railroad company had, under sections 4069 and 4094, R. S. 1881, two

years from that time within which to commence work, and that the condition in the petition, that the company should complete its road through the township, and erect its depots in Columbus, on or before the first day of June, 1882, is in conflict with the law, and void. In this we do not agree with the learned counsel.

Section 4045, R. S. 1881, provides that the petition presented to the board of commissioners asking for an appropriation to aid in the construction of a railroad may contain conditions upon which such aid shall be voted and given. The language of the section upon that subject is: "and upon the terms and conditions as to freights, rates, location of machine shops, depots, and such other terms and conditions as may be specified in such petition." Section 4058, R. S. 1881, has reference to what may be done after the tax shall have been collected, in whole or in part, and provides that, in making donations or taking stock, the board of commissioners shall make a contract with such railroad company, as to freight rates, location of machine shops, depots, and such terms as may have been specified and set forth in the petition upon which such moneys were voted, and that such contract may be enforced by any taxpayer, etc. It is argued by counsel that because such a contract must follow the levy of the tax, because a taxpayer may enforce it, and because a condition in relation to the time within which the railroad shall be constructed could not be embodied in such a contract, therefore such a condition can not be embodied in the petition so as to become binding upon the railroad company, or any one else. In other words, that no binding condition can be embodied in the petition, which, in the nature of things, may not be embraced in such contract by the board of commissioners. We do not think that this is the proper construction of the two sections. Section 4045 names certain conditions, which are also named in section 4058. These conditions have reference to matters which concern the permanent location and operation of the road, and the buildings and business con-

nected therewith ; but section 4045 expressly authorizes other conditions to be inserted in the petition, which are not named in section 4058. We can think of no condition more fitting and necessary than the condition in the petition for aid to the Evansville, Seymour and Bellefontaine Railroad Company, viz., that the railroad shall be constructed through the township, within a certain fixed time.

Section 4045 is an amendment of an amendment of section 1 of the act of 1869 (Acts 1869, p. 92). As the section originally stood, there was no provision in it authorizing aid to be voted upon conditions named in the petition. This original section was amended in 1875 (Acts 1875, Spec. Sess., p. 70), but this amendment contained no provision upon the subject of conditions in the petition.

This amended section was amended in 1879 (Acts 1879, p. 46), and the provision inserted. The history of the legislation upon this subject shows that the law-makers appreciated the necessity for such provisions. In many cases, aid had been voted to railroad companies but the roads had not been built. The condition that the railroad shall be built within a limited time is different from any of the matters enumerated in section 4058, comes fairly within the provision "and such other terms and conditions as may be specified in such petition," in section 4045, and is, we think, valid and binding. It is argued further, that as other sections of the law give to railroad companies certain time after the levy of the tax, within which to commence and complete the construction of their roads, this time can not be abridged by any conditions in the petition.

As we understand these aid laws, construing all of the sections together as we find them in the R. S. 1881, they fix and limit the time within which, after the appropriation, the railroad company shall commence and complete the construction of its road to be entitled to the appropriation, except where such time is fixed and limited in the petition under section 4045 ; and that when such time is so fixed in the petition, as a condition to the granting of the aid, the vote is taken upon

such condition, and it is valid and binding upon the voters, the board of commissioners in the subsequent proceedings, and upon all others.    We do not regard this as entirely a new question in this court.

In the case of *Faris* v. *Reynolds, supra,* which arose under section 1 of the act of 1869, before it was amended, it was held that the petitioners might designate in their petition whether the aid voted should be by way of donation or for stock of the railroad company, and that whichever object might be designated by the petition, and vote of the people, was binding upon the board of commissioners and all others. The case of *Brocaw* v. *Board, etc.,* 73 Ind. 543, is, in some of its features, very similar to the case in hearing, and is authority. In that case it was claimed that a condition in the petition was not warranted by the law.    The condition was that the railroad company should complete a certain portion of its road within a given, limited time, and that the appropriation should be made upon such condition.    This condition was held to be not in conflict with any provision of the law, and valid and binding.

The voters of Columbus township voted the aid to the Evansville, Seymour and Bellefontaine Railroad Company upon the condition expressed in the petition, and not other-wise.    If, as contended by appellant's counsel, the conditions were in violation of law, it would seem to follow that the whole proceedings and appropriation were illegal and void, and hence not in the way of the aid to the Columbus, Hope and Greensburg Railroad Company.    *Indiana, etc., R. W. Co.* v. *City of Attica,* 56 Ind. 476.

As we have seen, one of the conditions in the petition for aid to the Evansville, Seymour and Bellefontaine Railroad Company was that the company should construct and complete a standard gauge railway through the township, and pass a train of cars over it before the 1st day of June, 1882.

This condition has not been performed in whole or in part by that company; on the contrary, it has no right of way in

the township or county, and has not constructed, or made any effort to construct, any part of its road in the township, county or State, has admitted its inability to comply with such conditions, and asked for an extension of time, which was refused by the board of commissioners.

On account of this failure to comply with the conditions we think that the vote in 1880, and the levy in 1881, in favor of the Evansville, Seymour and Bellefontaine Railroad Company, are not in the way of the appropriation made in aid of the Columbus, Hope and Greensburg Railroad Company in 1882. We think, too, that the Evansville, Seymour and Bellefontaine Railroad Company forfeited all rights to the appropriation voted to it, under section 4062, R. S. 1881, which declares such forfeiture if work be not commenced upon the railroad within one year from the levying of the special tax. Having reached the conclusion stated, upon the grounds stated, it will not be necessary for us to give a construction to sections 4069 and 4094, R. S. 1881. We may say, however, without deciding, that we are inclined to the opinion that section 4094 relates to corporations organized at the time that section, which was section 1 of the act of 1877, was passed. What may be the proper construction of section 4069, in connection with other sections of the acts authorizing township aid to railroad companies, it is not necessary for us to decide under the issues and facts in this case.

Appellant's case, upon the point under consideration, is infirm also, in the proof, as we think. There is no proof at all as to the amount of the taxable property of the township for either of the years 1879, 1880, 1881 or 1882. For aught that appears in the evidence, the value of the taxable property may have been such that the appropriations to both railroad companies might have been made without transcending the limit fixed by sections 4045, 4056 and 4057, R. S. 1881.

The record shows that at the June term, 1881, the board of commissioners levied a special tax of one per centum upon the taxable property of the township, to meet the appropria-

tion voted to the Evansville, Seymour and Bellefontaine Railroad Company. What the value of the taxable property of the township for that year was, or whether a tax of one per centum would produce a sufficient sum to meet the entire appropriation, is not shown. In the order of the board of commissioners levying the special tax at the June session, 1882, to meet the $70,000 appropriation to the Columbus, Hope and Greensburg Railroad Company, there is a statement that the amount exceeded one per centum of the value of the taxable property of the township, as shown by the tax duplicate for the year 1881. There is also an admission in the record, taken as evidence, that the $70,000 did not exceed two per centum of the value of the taxable property of the township, upon the duplicate for the year 1881, and that one per centum of that value would produce $35,000. This is all there is in the record to show directly or indirectly the value of the taxable property of the township. How much the $70,000 exceeded one per centum, or how far it fell short of two per centum, or how much more than $35,000 a tax of one per centum would produce, is not shown.

Complaint is made of the ruling of the court below in sustaining a demurrer to the first paragraph of the objections filed by appellant. The substance of that paragraph is that the city of Columbus, in Columbus township, is in debt to the amount of two per centum of the taxable property in the city, the limit fixed by article 13 of the Constitution of the State, and that the $70,000 appropriation will increase the debt of the city beyond that limit, and that, therefore, the appropriation can not be made.

This objection is not tenable. The city is an integral part of the township, but it is not the township, nor is the township the city. They are distinct corporations, with distinct powers, privileges and rights. The debt of the township, which includes the city within its limits, is not the debt of the city in the sense in which that term is used in the 13th article of the Constitution. Objections are made by appellant's coun-

sel in argument, that there is no evidence showing that the Columbus, Hope and Greensburg Railroad has been permanently located in the township, or that any work has been done upon it. These questions are not before us. They were not made before the board of commissioners, and were not and could not have been made under the issues in the court below. The case stood for trial in the court below upon the objections made before the commissioners, and none others. *Breitweiser* v. *Fuhrman,* 88 Ind. 28 ; *Peed* v. *Brenneman, ante,* p. 252.

A further objection is made by appellant's counsel to the form of the judgment rendered by the court below. The whole of the argument is : "The question thus reserved is whether the circuit court takes control of the matter, or whether it should be remitted to the county commissioners. The judgment of the court is respectfully asked to this alleged error."

This does not comply with the rules of this court in relation to briefs. We may add, however, that we think there is no available error. *Mandlove* v. *Pavy,* 33 Ind. 505 ; *Gavin* v. *Board, etc.,* 81 Ind. 480, 485.

As we find no error in the record for which the judgment should be reversed, it is affirmed, at the costs of appellant.