MOORE v. COMMISSIONERS' COURT OF BELL COUNTY et al. (No. 5453.)

(Court of Civil Appeals of Texas. Austin. Feb. 10, 1915. Rehearing Denied April 15, 1915.)

1. HIGHWAYS ⊚⟶90—ROAD DISTRICTS—TERRITORY—CONSTITUTIONAL AND STATUTORY PROVISIONS.

Const. art. 3, § 52, as amended in 1904, empowers the Legislature to authorize any county, any number of adjoining counties, or any political subdivision of the state or a county, "or any defined district now or hereafter to be described" by a majority vote of its resident property tax payers, to issue bonds or lend its credit for the construction and operation of roads, which territory may include municipal corporations, and Rev. St. art. 627, giving to such districts the same powers, and other articles thereof relating to the election, and to the issuance and sale of bonds, were not intended to be limited to political subdivisions either then in existence or to be subsequently created by the Legislature; but such political subdivisions might for the first time be created by the action of

the commissioners' court in ordering an election in a particular territory.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 301, 302; Dec. Dig. ⊚⟶90.]

2. STATUTES ⊚⟶206—CONSTRUCTION—GIVING EFFECT TO ALL PARTS.

All the language of a statute must be given effect, if it is possible to do so.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 283; Dec. Dig. ⊚⟶206.]

3. HIGHWAYS ⊚⟶90 — ROAD DISTRICTS — INDEBTEDNESS—STATUTES.

Under Const. art. 3, § 52, as amended in 1904, declaring that the total indebtedness of any city shall never exceed the limits imposed by other constitutional provisions, the issuance of bonds of a road district, including a city which had already created an indebtedness and issued bonds to the amount permitted by the Constitution, did not increase the bonded or other indebtedness of the city, as it and the district were separate municipalities, and, the provisions not prohibiting the placing of an additional burden by taxation upon property located within a city which has already reached its constitutional limit of indebtedness, but only prohibiting bonded indebtedness of the municipality beyond a certain limit, such municipal indebtedness did not render the road district's issuance of bonds void.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 301, 302; Dec. Dig. ⊚⟶90.]

4. HIGHWAYS ⊚⟶90—ROAD DISTRICTS—BONDS—TIME.

Under Rev. St. art. 632, providing that the bonds of a road district shall run not less than 20 nor more than 40 years, with such option of redemption as may be fixed by the commissioners' court, the court's fixing of 40 years as the date of maturity of the district bonds, reserving the option to redeem some of them before the expiration of 20 years, was valid, since the option did not relate merely to such time as might intervene after the expiration of 20 years and the time fixed for the maturity of the bonds.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 301, 302; Dec. Dig. ⊚⟶90.]

5. HIGHWAYS ⊚⟶90—ROAD DISTRICTS—BONDS—INTEREST.

Under Rev. St. arts. 627–641, not requiring the order providing for an election on an issuance of bonds by a road district to state when interest thereon shall be payable, and providing that the bonds shall bear not more than 5½ per cent., and article 633, making the general laws relating to county bonds applicable, and article 612, declaring that interest on county bonds may, in the discretion of the commissioners' court, be payable semiannually, the issuance of bonds of a road district bearing interest at 5 per cent. payable semiannually was valid, although the order of the commissioners' court under which the election was held stated that the vote was to be on the issuance of bonds bearing interest at 5 per cent. per annum.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 301, 302; Dec. Dig. ⊚⟶90.]

Appeal from District Court, Bell County; John D. Robinson, Judge.

Action by T. T. Moore against the Commissioners' Court of Bell County and others. Judgment for defendants, and plaintiff appeals. Affirmed.

A. W. Gibson, of Rogers, and Morrison & Lewis, of Cameron, for appellant. Lewis H. Jones, of Rogers, and W. O. Cox, of Temple for appellees.

---

⊚⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

KEY, C. J. T. T. Moore instituted an injunction suit, by which he sought to restrain the commissioners' court of Bell county from selling certain bonds which had been issued, and which he alleged were about to be sold by that court for road district No. 10 of Bell county; and he also sought to restrain the tax collector from collecting the taxes levied to pay interest and create a sinking fund for the redemption of the bonds. The district judge granted a temporary restraining order to remain in force until the 31st day of August, 1914, at which time the case was set for further hearing. The defendants filed an answer, but we do not deem it necessary to set out in full the pleadings of either party, and content ourselves with saying that the questions of law hereafter discussed were and are presented by the pleadings. At the time set there was a further hearing, as a result of which the trial court held that the plaintiff was not entitled to injunctive or other relief, and he has appealed.

The validity of the bonds and the levy of the taxes were assailed on the following grounds, as stated in appellant's brief.

"(1) That there is no provision of law conferring authority on the commissioners' court of a county to create a road district or corporation out of territory less than an already existing political subdivision of the county, and that therefore the attempted creation of such district is void.

"(2) That even if the authority can be found in the commissioners' court by implication to create such a district, yet that the provisions of the statutes embraced in articles 627 to 641 are obnoxious to section 19 of the ·Bill of Rights of the Constitution of Texas, and section 1 of the fourteenth amendment of the Constitution of the United States, in that and because the method providing for the creation of said road district by the statutes mentioned are of such character as to take the appellant's property by taxation, without due process of law, and to deny him the equal protection of the law, for the reason that it is sought thereby to create a corporation with the power of taxation, and there is a total failure to provide for a hearing by appellant or any other person interested in the creation of said district, and that there is no provision by which an interested person can be heard or allowed to state his objections to the creation of such district, and that the methods employed are too vague, indefinite, and uncertain to constitute due process of law.

"(3) That the field notes of the district are too vague, indefinite, and uncertain to close or define the territorial limits of a corporation with power to levy and collect taxes.

"(4) That the levy and collection of 75 cents taxes on the $100 valuation of property is excessive and unconstitutional as applied to the appellant, for the reason that in said purported road district, and entirely surrounded by the territory thereof, is situated the incorporated city of Rogers, which is a city of less than 5,000 inhabitants incorporated under the general laws of the state, and that said city before the issuance of said road bonds had issued and sold waterworks bonds of said city in the sum of $14,000, and had levied taxes to the full constitutional amount of 25 cents on the $100 valuation of all property in said city to pay the interest and create a sinking fund for the redemption of said bonds, and in addition thereto had also levied the full constitutional limit of 15 cents on the $100 valuation on the property of said city for streets and bridges; and for those reasons is it contended that the territory comprising the city had no authority to 'lend its credit' in the issuance of the road bonds, for the reason that its 'total bonded indebtedness' and rate of taxation were thereby made to exceed the limits provided by the Constitution.

"(5) That in the order of the commissioners' court calling the election, and in the notices, and in the publication of said election, it was provided and stated that the issue of bonds to be voted on in said election should bear interest at the rate of 5 per cent. per annum and mature 40 years from date, but that the bonds had not been issued in accordance with such order and notices of election, and that said order and notices of election had been violated for the reason that the bonds had been issued bearing interest at 5 per cent., payable semiannually, and that they should mature annually every year from 1915 to the end of the 40 years."

All of the foregoing questions have been ably presented in this court by counsel for appellant, maintaining the affirmative, and by counsel for appellees, maintaining the negative. Each, of these questions have received careful consideration at the hands of this court, and our conclusion is that the trial court ruled correctly when it decided the points referred to against appellant's contention, and some of the reasons for that conclusion will now be stated.

[1, 2] In 1904, section 52, title 3, of the Constitution of this state, was so amended as to confer power upon the Legislature to authorize any county, any political subdivision of the county, any number of adjoining counties, or any political subdivision of the state, "or any defined district now or hereafter to be described and defined within the state of Texas," in addition to all other debts, by a vote of two-thirds majority of the resident property tax-paying voters, to issue bonds or otherwise lend its credit in any amount, not to exceed one-fourth of the assessed valuation of the real property of such district or territory, for certain designated purposes, one of which is the construction, maintenance, and operation of roads and turnpikes, or in aid thereof. It is specifically stated in that article that the territory which might be authorized by the Legislature to issue bonds, etc., "may or may not include towns, villages or municipal corporations"; and it is also therein stated that the total bonded indebtedness of any city or town shall never exceed the limits imposed by other provisions of the Constitution. Acting under that constitutional provision, in 1909 the Legislature passed the road law, which now comprises articles 627 to 641, inclusive, of the present Revised Statutes. Article 627 reads as follows:

"Power to Issue Road, etc., Bonds and Levy Tax for Interest and Sinking Fund. Any county in this state, or any political subdivision or defined district, now or hereafter to be described and defined, of a county, is hereby authorized and empowered to issue bonds, or otherwise lend its credit, in any amount not to exceed one-fourth of the assessed valuation of the real property of such county, or political subdivision, or defined district thereof, and to levy and collect such taxes to pay the interest upon such bonds and provide a sinking fund for the re-

demption thereof, for the purpose of constructing and maintaining and operating macadamized, graveled or paved roads and turnpikes, or in aid thereof."

The other articles relating to that subject cover all the details necessary for the election and the issuance and sale of the bonds. It was under that law that the commissioners' court of Bell county was proceeding when this suit was instituted. The main question in this case, and the point which seems to be urged with greatest confidence by appellant, involves the construction to be placed upon the language of the Constitution, and also the statute, which reads, "or any defined district now or hereafter to be described and defined." Counsel for appellant contend that while that language in the Constitution may authorize the Legislature to create and define additional districts itself, or may authorize it to prescribe the mode and manner in which such districts may be created by the commissioners' court, before any action is taken looking to the issuance of bonds therein, that it does not confer power upon the Legislature to authorize the issuance of bonds in territory that has not been defined as a district, until it is so done in the order of the commissioners' court providing for the election to determine whether or not the bonds shall be issued. In other words, the contention is that the language quoted was intended to prescribe and be limited to political subdivisions either then in existence or to be subsequently created by the Legislature, or under its authority, and that such political subdivisions cannot for the first time be created by the action of the commissioners' court in ordering an election in a particular territory. We are unable to sanction that contention. In the first place it violates a cardinal rule of construction, which requires all the language of a written instrument to be given effect, if it is possible to do so, because that which preceded the language under consideration covered every political subdivision, both state and county, which then existed or might thereafter be created, and therefore it was not necessary to use any further language in reference to such territory, and if the language "or any defined territory," etc., can be given any other meaning it should be so construed. We are of opinion that, in using the language referred to in amending the Constitution, it was the intention of those who framed the amendment, and of the people who adopted it, to authorize the Legislature to bring the government closer to the people, in order that the latter might have the right, if they saw proper, to place an additional tax upon themselves for certain designated purposes, and in order to place its benefits within the reach of all, after specifically designating the political subdivisions of the state and its several counties, the language referred to was added, so that the people in any territory which might not be embraced in those specified could have the benefits of the law.

In using that language in the statute, no doubt the Legislature was aware of the fact that whenever it was sought to obtain its benefits, in order to accomplish that result it would be necessary for a petition to be presented to the commissioners' court, describing and defining the proposed territory, and it would also be necessary for that court, in ordering the election, to give the same description that was given in the petition. Now, when that has been done, then the district has been described and defined by the commissioners' court by an order entered upon its minutes; and it is probable that in enacting the statute the Legislature intended that the district should be so defined and described by the commissioners' court. Neither the Constitution nor the Legislature designated the mode and manner by which other districts should be described and defined; and when the Legislature passed the law, making it the duty of the commissioners' court, upon proper application, to order an election to be held in "any defined district now or hereafter to be described and defined," and did not designate any other officer or person to describe and define it, it seems reasonable to conclude, and we hold, that it was intended that the commissioners' court should do so. That is the course that was pursued in this case, and we think it was authorized by the statute referred to, and therefore was legal.

[3] The proof shows that road district No. 10 includes the city of Rogers, containing less than 5,000 inhabitants, incorporated under the general laws of the state, and that before the issuance of the bonds here involved that municipality had created indebtedness and issued bonds to the full extent permitted by the Constitution, and therefore it is contended by appellant that that provision of the Constitution which is incorporated in the section authorizing the issuance of bonds, and which declares that "the total indebtedness of any city or town shall never exceed the limits imposed by other provisions of this Constitution," renders the proceeding here involved unconstitutional and void. The answer to that contention is that the matters here complained of do not increase the bonded indebtedness, or any other indebtedness, of the city of Rogers. The constitutional provision referred to does not prohibit the placing of an additional burden by taxation upon property located within a town or city which has already reached its constitutional limits of bonded indebtedness, but it prohibits bonded indebtedness of the municipality beyond a certain limit. In other words, the county government and city or town government are separate and distinct legal entities, and while each may embrace a particular territory, yet they are separate and distinct, and the imposition of a tax by one does not increase the indebtedness of the other. That subject is dealt with and the distinction referred to clearly shown by Mr. Justice Dibrell in the opinion of the Supreme

Court in Simmons v. Lightfoot, 105 Tex. 212, 146 S. W. 872, a case which involved the statute under which the commissioners' court acted in this case; and while it does not appear that the constitutional questions that are urged in this case were presented or considered in that case, still that decision is at least persuasive authority upon some of the questions involved in this case.

Going back to the immediate question under consideration, we cite in support of our holding Campbell v. City of Indianapolis, 155 Ind. 186, 57 N. E. 920; Board v. Harrell, 147 Ind. 500, 46 N. E. 124; Kennebec Water District v. City of Waterville, 96 Me. 234, 52 Atl. 774; Ex parte City of Newport, 141 Ky. 329, 132 S. W. 580, 37 L. R. A. (N. S.) 1034, Ann. Cas. 1912C, 447; Wilson v. Sanitary District, 133 Ill. 443, 27 N. E. 203; Irwin v. Lowe, 89 Ind. 540. All these authorities tend to support the proposition that while the city of Rogers is an integral part of road district No. 10, still, as they are separate and distinct corporations, having separate and distinct powers and privileges, the indebtedness of one is not the indebtedness of the other. In Ex parte City of Newport, supra, the Court of Appeals of Kentucky copies with approval the following statement of the law:

"Where two or more municipal corporations or political bodies are wholly or partly coincident in territory, they are nevertheless regarded as separate bodies for the purposes of constitutional debt limitations, unless the contrary is expressed in the Constitution. In reckoning the indebtedness of a county, the indebtedness of a city within its borders is not to be considered; in reckoning the indebtedness of a city, the debt of an independent school district wholly or partly in the city limits is not to be considered; and vice versa."

[4] It is also contended by appellant that the bonds in question are illegal because of the failure to comply with article 632 of the Revised Statutes, which in part reads thus:

"Such bonds shall run not less than twenty nor more than forty years, with such option of redemption as may be fixed by the commissioners' court."

The commissioners' court fixed 40 years as the date of maturity of the bonds, but reserved an option by which the county could redeem some of them before the expiration of 20 years, and this is the point of appellant's complaint. In other words, the contention is that the provision of the statute declaring that the bonds shall run not less than 20 years is mandatory, and that the option conferred upon the county merely relates to such time as may intervene after the expiration of 20 years and the time fixed for the maturity of the bonds. While at first blush there may be some plausibility in that contention, we do not think 'it will stand the acid test of reason. For instance, suppose the commissioners' court should fix 20 years as the time for bonds to mature, then, according to appellant's contention, the court would have no power to fix an earlier date for the redemption of any of them. The language of the statute "with such option of redemption as may be fixed by the commissioners' court," is just as much a part of the statute as that portion of it which declares that the bonds shall run for not less than 20 years. Without the language conferring the option, the bonds would be compelled to run at least 20 years, and the commissioners' court would have the power to extend the date of maturity to 40 years, and would have no option of redemption. But the Legislature saw proper to confer an option of redemption upon the commissioners' court, and instead of saying that the option should be in any wise limited the Legislature said that it should be such as may be fixed by the commissioners' court. That language is as broad as it could well have been made, and when given its ordinary and usual signification it covers the entire period of time embraced in the life of the bonds. The meaning of the language "run not less than twenty years" is by no means as clear and certain as the language "such option of redemption," etc. There is no ambiguity about the meaning of the word "such" in the connection in which it is used. It conveys the idea and expresses the thought of unlimited power as to the exercise of the right therein conferred. But the meaning of the word "run," as used in this statute, is by no means as obvious and clear; and by holding that it means that the bonds shall be so written as that payment cannot be lawfully demanded until the expiration of 20 years, and was not intended as a limitation upon the power of the commissioners' court in fixing the option of redemption, then the option clause can be held, as its language imports, to apply to the entire time, thereby giving harmonious effect to every word of the statute. Therefore we place that construction upon it, and hold that the bonds comply with the law in that regard.

[5] The bonds bear interest at the rate of 5 per cent. per annum, payable semiannually, while the order of the commissioners' court under which the election was held stated that the question to be voted on was the issuance of bonds, amounting to $250,000 bearing interest at the rate of 5 per cent. per annum, and maturing 40 years from the date thereof. The order referred to was silent as to the time when the interest was to be paid, and as to the right of redemption; and for 'these reasons it is contended on behalf of appellant that the bonds were illegal, because they are not in compliance with the order of the commissioners' court. The statute does not require the order providing for the election to state the time when interest shall be payable; nor does it require such order to show what option of redemption will be reserved by the county; and the same may be said as to the article of the statute requiring notice of the election. The law provides that the bonds shall bear not more than 5½ per cent. interest per annum. The bonds in this case, as said above, bear interest at the rate

of 5 per cent. per annum, payable semi-annually, which is less than 5½ per cent. payable annually. Furthermore, it is provided by article 633 of this statute that the general laws relating to county bonds, not in conflict with the act referred to, shall apply to the issuance and payment of the bonds then under consideration by the Legislature; and article 612, R. S., which has been in force since 1893, and relates to county and municipal bonds, declares that interest upon county bonds may, in the discretion of the commissioners' court, be made payable semiannually. Hence we hold in the case at bar that, as the act of 1909 contains no provision in conflict with article 612, the latter article authorized the commissioners' court to make the interest payable semiannually.

We also overrule appellant's contention that the order of the commissioners' court does not sufficiently describe the territory, and hold that the record shows substantial compliance with all the requirements of the law, and that the trial court ruled correctly when it held that the bonds are valid and refused to restrain the commissioners' court from selling them; and therefore the action and judgment of that court is affirmed.

Affirmed.