DOSS et al. v. CHAMBERS et al. (No. 5706.)*

(Court of Civil Appeals of Texas. Austin. May 24, 1916.)

1. ELECTIONS ⊕255 — CONTESTS — PRESERVATION OF BALLOTS.

Under Rev. St. 1911, art. 3027, as to preservation of ballots, and article 3028, as to their destruction in the event of no contest within one year after the election, where a contest is brought, although no notice is served on the clerk to preserve ballots and the ballots are destroyed by a janitor, after bringing of the contest and more than a year after the election, they are not legally destroyed.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 231; Dec. Dig. ⊕255.]

2. ELECTIONS ⊕255 — CONTESTS — PRESERVATION OF BALLOTS—NECESSITY OF NOTICE OF CONTEST.

Under such statutes, the contestants may presume that the clerk will preserve the ballots and need not take steps for preservation of the ballots.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 231; Dec. Dig. ⊕255.]

3. EVIDENCE ⊕178(2)—ELECTION CONTESTS— ADMISSIBILITY OF SECONDARY EVIDENCE.

Where ballots are illegally destroyed, the contestants may question illegal voters as to the way they voted, under the rule that if it is impossible to produce a written document its contents may be proved by parol testimony, and Rev. St. 1911, art. 3056, providing that in election contests the rules governing trial of other civil cases shall apply.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 582, 588; Dec. Dig. ⊕178(2).]

4. EVIDENCE ⊕178(2) — BEST EVIDENCE — PAROL TESTIMONY.

That admission of parol evidence gives opportunity for perjury which might be avoided if the documents testified to were introduced affords no ground for departing from the rule that if the document is destroyed parol evidence is admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 582, 588; Dec. Dig. ⊕178(2).]

5. ELECTIONS ⊕294 — CONTESTS — CONCLUSIVENESS OF RETURNS.

Where ballots are illegally destroyed the returns of the election officials tabulated and declared by the commissioners' court do not become an official adjudication as to the true result of the election so as to render parol evidence inadmissible where a contest is based on alleged illegal votes, which, if excluded, would change the result.

[Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 288–296; Dec. Dig. ⊕294.]

Appeal from District Court, Milam County; J. C. Scott, Judge.

Election contest by E. A. Doss and others against W. W. Chambers and others. From a judgment for plaintiffs sustaining decision of the commissioners' court, the plaintiffs appeal. Reversed and rendered.

Morrison & Lewis, of Cameron, for appellants. J. W. Garner and E. A. Camp, both of Rockdale, and E. A. Wallace, of Cameron, for appellees.

KEY, J. Appellants brought this action against the proper county officers for the

purpose of contesting a road bond election, and from a judgment in favor of the appellees and sustaining the action of the commissioners' court in declaring the result of the election to be in favor of issuing the bonds, the appellants have brought the case to this court for revision. The case was tried upon an agreed statement as to the facts, which agreement reads as follows:

"(1) That the road bond election described in plaintiffs' petition was held in the district therein described on the 27th day of May, A. D. 1914, and that the result of said election was declared by the commissioners' court on the 7th day of June, 1914, and in which said commissioners' court found that there had been cast in said election 1,013 votes, and that 677 of the same had been cast in favor of the issuance of the bonds and the levy of the tax, and 336 had been cast against the issuance of the bonds and the levy of the tax.

"(2) That afterwards, on the 27th of June, 1914, the contestants, as named in the petition herein, filed their original petition in this court making the county attorney and county judge of Milam county contestees, and that on the same day a due and correct copy of the plaintiffs' said petition was delivered to the said county attorney and county judge as provided by law.

"(3) It is further agreed that on the day that said original petition was filed, counsel for the contestants verbally notified the clerk of the county court of Milam county that said contest had been filed, and requested that the ballots be preserved for the trial of this cause, and the said clerk agreed to preserve said ballots and undertook to do so, and to that end, he separated the boxes containing said ballots into a separate assembly in a large commodious air-tight vault used by said clerk for the purpose of preserving all ballots of elections, and that afterwards, while said clerk was out of the state on his vacation, in the summer of 1915, and after twelve months after said election, the janitor of said building, who had a key to said vault, and in the absence of said clerk, was preparing said ballot boxes for a local option election to be held in Milam county, Tex., on the 4th day of August, 1915, without the knowledge, permission, consent, or acquiescence of either the contestants or contestees destroyed said ballots, and that neither of the parties hereto was apprised of such destruction of said ballots until about the first day of the present term of this court, and that said ballots are not obtainable or in existence, but that the poll lists and returns from the various voting boxes were preserved by the county clerk out of the copies that were filed with him after such election, and that the contestants nor their attorneys did not take any action to obtain from this court any writ, order, or process to preserve said ballots pending the disposition of this cause.

"(4) That at the past two terms of this court the said cause was continued by mutual agreement of the parties to await the action of the Court of Civil Appeals and the Supreme Court on the questions of law involved in the case of T. T. Moore et al. v. Commissioners' Court of Bell County, as reported in 175 S. W. 849.

"(5) That at the present term of this court, witnesses have been examined for two days, and the parties, in order to obviate the necessity of further examination of witnesses, have made this agreement.

"(6) It is further agreed by the parties hereto that 14 voters at the voting box at Rockdale voted against the issuance of the bonds and the levy of the tax, and that the balance of said box, amounting to 397, voted in favor of the issuance of said bonds and the levy of said tax.

"(7) It is further agreed that six witnesses whose votes are challenged by contestants and who have been placed upon the stand by plaintiffs, and who by their testimony proved that they were illegal voters and that they voted in said election, and when asked by contestants how they voted, the contestees objected for the reason that under the pleading and in the absence of the ballots, the witnesses should not be permitted to testify how they voted in said election. The contestants contend that under the circumstances, said witnesses should be permitted to testify how they voted, and in view of these contentions, it is admitted that there were illegal voters who participated in said election as shown by the pleadings of both parties, and that it would be impossible for the court to determine the true result of said election, unless said challenged voters should be permitted to testify how they voted. To expedite the trial of the cause it is agreed that there is no other evidence within reach, from said returns or otherwise, from which the result of said election can be determined, and that if said challenged voters may testify how they voted in said election, then the evidence will justify a finding for contestants, and that the judgment shall be in their favor; but if the law of this proposition is as contended for by the contestees—that is, that said voters are not permitted to testify under the circumstances of the case as to how they voted—then the judgment shall be entered for the contestees, and the election upheld.

"(8) It is further agreed that in the event the trial court or the appellate courts shall hold with the contestants on the question of law, the judgment shall be for the contestants, otherwise in favor of the contestees. This agreement shall not waive the question of law arising under the demurrers to the pleadings."

The trial court held, as conclusions of law, that the ballots referred to were legally destroyed, and that as appellants took no statutory action to have them brought into court and preserved to be used as evidence in this case, and as no fraud was charged, the result of the election, as declared by the commissioners' court, was final and conclusive, and could not be impeached and set aside by the oral testimony of the voters who were conceded to have voted illegally. Broadly speaking, counsel for appellants make two contentions, which are: First, that the written agreement upon which the case was tried shows on its face that enough illegal votes were cast for the issuance of bonds to change the result of the election, and if not, then it was impossible for the court to determine the true result, and therefore the election should be declared void and another election ordered; and, second, that those who voted illegally should have been permitted to testify how they voted. On the other hand, it is contended by counsel for appellees that it is shown by the concluding part of the agreed facts that the agreement was that if it should be held by the courts that illegal voters should be permitted to testify as to how they voted, the judgment should be in favor of the appellants; but if it should be held not permissible for them to do so, the judgment should be for the appellees and they deny that such voters should have been permitted to so testify. The agreement referred to is somewhat ambiguous, but as we have reached the conclusion that if appellees' construction of it be adopted, nevertheless the case should be reversed and rendered, we deem it unnecessary to pass upon appellants' first contention.

[1, 2] It is provided by article 3027 of the Revised Statutes that ballots which have been voted shall be securely fastened in a box and delivered by the proper election officer to the clerk of the county court, "whose duty it shall be to keep the same securely, and, in the event of any contest growing out of elections within one year thereafter, he shall deliver said box to any competent officer having a process therefor, from any tribunal or authority authorized by law to demand such ballot box"; and article 3028 reads thus:

"In the event that no contest grows out of the election within one year after the day of such election, the said clerk shall destroy the contents of said ballot box by burning the same."

Others articles of the Revised Statutes make provision for contesting elections, including such as the election here involved, one of which (article 3056) reads in part as follows:

"And, as to the admission and exclusion of evidence, the trial shall be conducted under the rules governing proceedings in civil causes."

We do not agree with the trial court in the holding that the ballots referred to were legally destroyed, nor do we approve the contention urged by appellees' counsel to the effect that appellants were guilty of negligence because they failed to take any steps to have the ballots removed from the custody of the county clerk and placed in the custody of an officer of the district court in time to have prevented their destruction in the manner disclosed by the agreed statement. By the terms of articles 3027 and 3028, hereinbefore referred to, the clerk of the county court was the legal custodian of the ballots; and, having been notified of the existence of the contest, he was not authorized to destroy them until after the contest was terminated, and therefore we hold that their destruction was illegal. We also hold that appellants had the right to presume that the county clerk would perform his duty and have the ballots accessible for the use of the district court when the case was called for trial, and therefore no duty devolved upon them to take steps to cause them to be removed from the possession of their legal custodian and placed in the possession of some one else.

[3, 4] But this does not dispose of the whole case, and the remaining question is this: It being agreed that illegal votes had been cast, and it having been shown that through no fault of appellants it is impossible to produce the ballots in order to show for which side such votes were cast, is it permissible, over the objection of the contestees, to permit the illegal voters themselves to testify how they voted? It will be observed

that the question submitted by the agreed statement, and upon which the decision of the case must turn, is not whether an illegal voter could be compelled to testify if he claimed his privilege not to do so, but whether such witnesses should be permitted to testify, as against the objection of one of the parties to the litigation. Perhaps decisions may be found which hold that if the witness claims his privilege not to give testimony tending to criminate himself, he cannot be compelled to testify that he voted in a particular election. But that question is not involved in this case. It is conceded that illegal votes were cast, and we infer that those who cast such votes were willing to testify as to how they voted, if permitted to do so. Decisions may also be found which hold, upon grounds of public policy, that 'when the law makes provision for secret voting no voter should be compelled, and perhaps some may hold that he should not be permitted, to testify in a contested election as to how he voted. There is another line of cases, supported by strong reasoning, which hold that the statute which provides for a secret ballot was enacted for the benefit of legal voters, and has no application when the object is to ascertain how an illegal voter cast his ballot; and that when that is the fact in issue, neither the public interest nor the welfare of the illegal voter should prevent the ascertainment of that fact by the use of any testimony that may be available. However, counsel for appellees make a plausible argument in support of the contention that since the adoption by this state of what is sometimes called the Australian ballot, parol evidence should not be received for the purpose of ascertaining how any person voted, whether such vote was legal or illegal. The contention is that the statute has provided a full and complete method for contesting all elections, including the means by which the ballots themselves may be preserved, brought into court and introduced in evidence, and that it was the legislative intent that no other source of information should be resorted to for the purpose of ascertaining how the voter cast his ballot. It is true that the Legislature has undertaken to provide a method by which ballots which have been voted shall be preserved, so as to render them available as evidence in contested election cases. But, as the facts of this case show, the means provided do not always produce that result; and the statute does not declare that no other source of information shall be resorted to. On the contrary, the statute provides that in passing upon the admissibility of evidence offered in such cases, the rules which govern in the trial of other civil cases shall be applied. R. S. art. 3056. We have adopted the common law in this state, and we apply the rules of evidence which pertain to that system of law, except when modified by statute; one of the rules being that when it is impossible to produce a written document in evidence, its contents may be proved by parol testimony, and we see no reason why that rule should not apply in this case. It may be true that such a rule will afford opportunities for interested parties to procure and utilize perjured testimony, but that is not sufficient reason for departing from the rule. In a majority of contested cases, opportunities exist to commit perjury, and in many of them it is difficult, if not impossible, to show that perjury has been committed; and while the rules of evidence have been framed with a view to ascertaining the truth, nevertheless they do not, as a general rule, refuse to permit a witness to testify merely because he may not tell the truth, and the falsity of his testimony cannot be established. Hence we hold that the temptation of parties interested in contested elections to procure and use perjured testimony, and the opportunity of voters whose ballots have been lost or destroyed to furnish such testimony, are not sufficient grounds for excluding that character of testimony when the ballots themselves cannot be procured.

[5] But it is contended on behalf of appellees that when the ballots cannot be procured the returns made by the election officers, as tabulated and declared by the commissioners' court, becomes, in a sense, an official adjudication as to the true result of the election, and parol evidence is not admissible to impeach such official action. That contention is not sound when, as in this case, the contest is based upon the fact that illegal votes were cast which, if excluded, would change the result of the election. In other words, if in reaching the result declared and certified by them, the election officers and the commissioners' court took into consideration ballots illegally cast, then it becomes the duty of the court trying the case in which such election is contested to exclude such illegal ballots in determining the true result of the election. In fact that argument, and the one which presents the contention that parol testimony given by the voter is not the best obtainable evidence as to the contents of the ballot voted by him when the ballot itself cannot be procured, is answered by the last paragraph in the seventh subdivision of the agreed facts, wherein it is stated that:

"There is no other evidence within reach, from said returns or otherwise, from which the result of said election can be determined."

Accepting the facts therein stated as true, and keeping in mind the rule that there are no degrees in secondary evidence, we hold that it was proper for appellants to introduce parol testimony, whether given by the illegal voter or any one else, for the purpose of showing the contents of the destroyed ballots.

There are some other questions presented in appellants' brief, but, in view of the dis-

position this court makes of the case, it is unnecessary to decide such other questions.

As authorized by statute, certain county officers were made contestees, and as the statute provides that in such cases no costs shall be taxed against such contestees, we hold that all the costs in this case should be taxed against appellants, who are contestants, and the sureties upon their bonds. Durham v. Rogers, 48 Tex. Civ. App. 232, 106 S. W. 906; Altgelt v. Callaghan, 144 S. W. 1166.

It is ordered that the judgment of the court below be reversed, and judgment here rendered in favor of the appellants, to the effect that the proposition submitted to the voters in the election involved in this contest did not receive the necessary number of legal votes for its adoption; and the commissioners' court of Milam county is ordered and directed not to issue any bonds predicated upon the result of such election; and it is further ordered that appellants, and the sureties upon their bonds, be taxed with all the costs incurred in this cause.

Reversed and rendered.