CANNON v. HEALY CONST. CO. et al.
(No. 2515.)

(Court of Civil Appeals of Texas. Texarkana.
May 31, 1922. Rehearing Granted
June 22, 1922.)

1. Highways ⬤99¼, New, vol. 14 Key-No.
Series—Funds of road district may be used
to improve city streets.

The special funds of a county road improvement district are not primarily the tax funds "of a city," but where a city is an integral part of the district warrants may be issued against such funds to pay for improvement of a city street, under Rev. St. arts. 627, 631, 1006-1010, and this was true in the city of Sulphur Springs under Sp. Laws 1911, c. 48, art. 29.

2. Municipal corporations ⬤469(1)—Levy for
street improvements not to be made upon
front-foot plan in Sulphur Springs.

The pro rata cost of street paving is by special charter of the city of Sulphur Springs (Sp. Laws 1911, c. 48, art. 29) to be levied and assessed according to the amount of increased value of the property added by reason of the improvement, and a levy made upon the front-foot plan is void.

On Motion for Rehearing.

3. Appeal and error ⬤1040(13)—Overruling
demurrer to answer held harmless error.

In a suit on a special assessment certificate issued for paving of street and a contract entered into by defendant property owner, error of the court in overruling a demurrer to an answer alleging that the certificate was void because assessment was levied on the front-foot plan was harmless, where plaintiffs were entitled to recover upon the contract alone, which was established by evidence beyond controversy.

4. Municipal corporations ⬤281(1)—Property
owner could make binding contract concerning improvement in street.

Owner of property abutting on a city street could make a binding personal contract concerning the improvement in the street.

Appeal from District Court, Hopkins County; Geo. B. Hall, Judge.

Action by the Healy Construction Company against J. L. Cannon and others. From an adverse judgment the named defendant appeals. Reformed and affirmed.

The Healy Construction Company, a partnership, brought the suit against J. L. Cannon and his wife on a special assessment certificate in the sum of $281.56, less $50 paid thereon, issued by the city of Sulphur Springs, Tex., to Cobb & Gregory, contractors, providing for the payment of the cost of curbing, paving, and improving the street as a highway in front of the premises of the defendants, and to foreclose the tax lien. Cobb & Gregory duly transferred and as-

signed the certificate to the plaintiffs, and they were the legal owners and holders of the same. The plaintiffs further pleaded that the defendants executed an agreement in writing, whereby they agreed to pay the contractors the amount called for by the certificate, and agreed that the certificate should constitute a lien on the premises until the price of the improvements upon the abutting street should be paid, and prayed for a personal judgment and for foreclosure of the contract lien upon the promise contained in the contract.

The defendants filed a demurrer, special exceptions, and a general denial, and specially answered by a plea of limitation of two years; that the assessment certificate was void as in violation of section 2, article 4, of the charter of the city of Sulphur Springs; that the contract between Cobb & Gregory and the city of Sulphur Springs and all the ordinances and resolutions and proceedings creating the improvement were void, as being contrary to and in violation of section 8 of article 29 of the charter of the city of Sulphur Springs, in that the levy and assessment of the cost adjudged was in proportion to "the front-foot" value, and not in proportion to the ad valorem value of the property assessed; that the property in suit is a homestead, and any lien thereon is void; that the improvements were not done according to the plans and specifications, but negligently and carelessly, resulting in great injury to the property of the defendants in drainage and overflows. By cross-action the defendants sought to recover $50 alleged to have been paid under mistake of fact. The plaintiffs excepted to the defendants' answer, and the court sustained the exceptions to the extent of paragraphs 4, 5, 6, and 7.

It appears that the Legislature granted a special charter to the city of Sulphur Springs, and that it is operating thereunder. By its terms judicial notice shall be taken of it, and therefore it is unnecessary to make statements from it. Special Laws, 32d Leg. p. 375. Subsequently, at a special election for the purpose, the city adopted as a part of the charter the law enacted by the Acts of 1909, 2 S. S. p. 403 (article 1006 and following of R. S. 1911). From the documentary evidence it appears that the county commissioners of Hopkins county had established and organized Road Improvement District No. 1, which included the city of Sulphur Springs, and had issued and sold bonds for $400,000. The commission, the governing body of the city, in furtherance of the said road improvement, determined to curb, place gutters, pave, and improve College street from Patton avenue to the city limits; and after various proceedings, including adoption of plans and specifications and assessment against the different property owners,

⬤For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

finally let the contract for the curbing and paving to Cobb & Gregory. The contractors entered upon the work, and the curbing and paving was completed and accepted by the city. On July 10, 1917, after the completion of the contract by Cobb & Gregory, there were issued to them certain certificates, among them being the certificate sued upon. The certificate in suit is in the sum of $281.-56, payable in three installments, coupons attached, of $93.85 each, in thirty days and one and two years, respectively, after date. The resolution passed by the city commission on July 16, 1916, creating the paving and improvement district, reads:

"Whereas, in the opinion of the commission of the city of Sulphur Springs, Texas, a necessity exists requiring the grading, raising, filling and paving of the hereinafter described street as hereinafter specified and installing concrete curbs and gutters on and along the same; and

"Whereas, in the opinion of the commission of the city of Sulphur Springs, that the property and real estate abutting and adjacent to the street hereinafter mentioned and described will be especially benefited thereby and that the owners of the property abutting and adjacent thereto will be fully compensated for the cost of said improvement in the enhancement of the values of the real estate and property affected by said improvement, and that the cost to said property owners in the opinion of the said commission of the city of Sulphur Springs, Texas, will be equitable and just in proportion to said increased value:

"Therefore be it resolved by the commission of the city of Sulphur Springs, Texas, that improvement district No. 16 shall consist of and include the area known as College street, beginning on said College street at the intersection of Patton avenue in and along said College street to the limits of the city of Sulphur Springs, Texas, and include all the property adjacent to and abutting on said College street within the limits as above set out and described; and said improvement district No. 16 shall include only the property and real estate above mentioned.

"Be it further resolved by the commission of the city of Sulphur Springs that it is the opinion of said commission that the cost of grading, raising, filling and paving and installing concrete curbs and gutters on said improvement district will be just to the property owners thereon and is warranted under a necessity which exists for said improvement, and that the cost of said improvement shall be paid as follows, to wit:

"(a) If said street in said improvement district or any part thereof is occupied by the tracks of any railway company or companies, then such railway company or companies shall pay all the cost of such improvement between its rail and track two feet on the outside thereof.

"(b) The city shall pay all the cost of the improvement in and on said street in said improvement district at the intersections of other streets and alleys with the said street named in said improvement district, and one-third of all the remaining cost of grading, raising and

filling and paving of the said street in the said improvement district, except the cost of curbing in front of the respective property owners, and except as hereinafter provided, and except such portion of such cost as is payable by the said steam railway company or companies as provided for under the terms of Clause 'A' above.

"(c) That the owners of the property abutting upon and adjacent to said street as named and bounded in said improvement district to be improved shall pay the whole cost of installing concrete curbs and gutters in front of their respective property, and all the remainder of said costs of said improvement, after deducting the amount herein specified to be paid by the city of Sulphur Springs, Texas, and said railway company or companies. Said amount to be paid by said property owners and which may be assessed against such abutting and adjacent property and its owners shall be proportioned as the frontage of each owner is to the whole frontage to be improved.

"Be it further resolved that the plan adopted by the commission of the city of Sulphur Springs, Texas, to be used for defraying the cost of said improvement as applied to the property owners whose property abuts and adjoins said street in said improvement district No. 16, shall be according to the 'front foot plan and rule,' provided that if the application of this rule, in the opinion of the city commission of said city, be unjust or unequal, or result in individual cases in assessment in excess of specific benefits received from such improvements, then the said city commission shall adopt such rule of apportionment as shall effect a substantial equality between said owners, considering the benefits received by and burdens imposed upon said owners and their respective property.

"Be it further resolved by the commission of the city of Sulphur Springs, Texas, that the city engineer be instructed to furnish to the commission an estimate in writing of the cost to the city and to each property owner whose property abuts and adjoins said street in said improvement district on said street in said improvement district, and plans and specifications thereof."

On July 10, 1917, the city commission adopted the following resolution:

"First. That all the work above described, which consists of pavement laid and constructed on College street, from the intersection of Patton avenue with the said College street, in and along the said College street to the city limits of said city, together with all curb and gutter laid and constructed on said section of said street in said improvement district, has been completed in accordance with the plans and specifications therefor and in accordance with the contract entered into by the city of Sulphur Springs, Texas, and the said Cobb & Gregory, contractors, and that all of the same be and is hereby approved and accepted as completed.

"Second. That the city engineer is hereby instructed to present and deliver to the commissioners' court of Hopkins county a statement and estimate of said work on said street in said improvement district, showing the said

amount due said contractors for said work.

"Third. That the mayor and city secretary be, and they are hereby, authorized to issue assignable certificates payable to the said contractors, Cobb & Gregory, against the different property owners on said section of said street in said improvement district and their respective pieces of property, for the respective amounts as shown in said above final estimate to be due by said property owners. Said certificates shall be made payable to the said contractors, Cobb & Gregory, and otherwise in accordance with the provisions as heretofore provided for said certificates, a copy of the form of said certificate being on file in the office of the city secretary of said city."

The contract between the city and the contractors, dated September 26, 1916, provides, as material to state:

"It is expressly agreed and understood by both the parties hereto. that all the specifications above mentioned and also the plans and specifications as adopted by the county commissioners' court for the construction of roads in road district No. 1 of Hopkins county, Texas, shall apply and be applied in the construction of said work when applicable, and all of said plans and specifications are made a part of this contract. * * * Compensation shall be paid to said contractor at the time and in the manner, to wit: (a) If said street or any part of it is occupied by the tracks of said railway company or companies, then such railway company or companies shall pay all the cost of improvement between its rails and tracks and two feet on the outside thereof at the price above mentioned, which payment shall be made by such company or companies.

"(b) The said contractor shall be paid by the commissioners' court of Hopkins county, Texas, for all the costs of improving the intersections of other streets and alleys with the said street named above to be improved, and the entire cost of improving 13.2 feet of the width of said street of the entire street as above named to be improved, except such portion of such cost as is payable by the said railway company or companies under the terms of clause A above, all payments to be made by said county commissioners' court at the times and in the manner as provided in the contract by and between said commissioners' court and said contractor herein, provided that no payment shall be made to said contractor until a written estimate has been made by the engineer in charge of all work of said improvements which has been completed, and said estimates and reports of said engineer shall have been duly approved by the city commission.

"(c) That owners of property abutting upon said street named to be improved shall pay the contractor the whole cost of installing concrete curbs and gutters in front of their respective property, and all the remainder of said cost of said improvements, after deducting the amount herein specified, to be paid by the commissioners' court of Hopkins county and said railway company or companies. The amounts to be paid by said property owners and which may be assessed against said abutting property and its owners shall be. proportioned as the frontage of each owner is to the whole front-

age to be improved, in accordance with what is known as the front-foot plan or rule, provided that if the application of this rule shall, in the opinion of the city commission of said city, be unjust or unequal, or result in individual cases in assessment in excess of special benefit received from such improvements, then the said commission shall adopt such rule or apportionment as shall effect a substantial equality between said owners, considering benefits received by and burdens imposed upon them and their property."

The property of appellant was the homestead of himself and wife, and enforcement of any contract lien against it, as well as personal judgment against the wife, was abandoned by the plaintiffs during the trial.

The jury answered "Yes" to the following special issue:

"Was the pavement in controversy in accordance with the plans and specifications set out in the contract entered into by and between the city and the contractors, Cobb & Gregory?"

Concerning this issue, as to the work in front of appellant's premises, the evidence is conflicting.

The court entered judgment against J. L. Cannon on the special assessment certificate, and he appeals.

Dial, Melson, Davidson & Brim, of Sulphur Springs, for appellant.

Connor & Ramey, of Sulphur Springs, and Clark & Sweeton, of Greenville, for appellees.

LEVY, J. (after stating the facts as above). It is insisted by the appellant, in the several propositions, that the levy and assessment on which the certificate sued on is based is void and not enforceable for the two reasons: (1) The contract let by the city commissioners is in violation of section 2, article 4, of the charter, in that no provision is made by the city for the payment of the debt; (2) the city commissioners by the resolution or ordinance adopted and followed provided that the amount assessed and levied against each parcel of land abutting on the street should be fixed by "the front-foot plan." Whereas the charter required that the amount assessed and levied should be according to the value of the property so assessed.

Section 2 of article 4 of the charter provides:

"No contract other than for current expenses shall be entered into by. said commission or city until after an appropriation shall have been duly made for the payment thereof, or a tax levied for the payment thereof, to pay interest and create a sinking fund, nor shall any contract be made in excess of the amount so appropriated or provided therefor."

The contract in this case made by the city commissioners provided that the contractors should look solely to the abutting property

owners for payment of two-thirds of the cost of the street improvement, and that as to the remaining one-third of the cost "the said contractor shall be paid by the county commissioners' court at the times and in the manner as provided in the contract by and between said commissioners' court and said contractors herein." It is in view of the terms of the contract that "the said contractors shall be paid by the county commissioners' court" out of the funds of the county road improvement district No. 1, that the appellant insists that the city, as such, had made no "appropriation," as required by the above charter provision, for the payment of its contract debt.

[1] It is evident from the language of the contract that the city commission did in fact undertake to make "an appropriation" or provision for the payment of the cost apportioned to the city for paving its street. When the conditions of the contract are fulfilled payment to the contractors of compensation is expressly provided therein. The contractors are to be paid in warrants issued by the county commissioners on the special fund, then available, of the county road improvement district No. 1. The special funds of the county road improvement district No. 1 are not, it is true, primarily the tax funds "of a city." Simmons v. Lightfoot, 105 Tex. 212, 146 S. W. 872; Moore v. Bell County (Tex. Civ. App.) 175 S. W. 849. But it does not follow, as a legal consequence, that no portion of such fund can be used by the county commissioners, or by the county commissioners and the city acting jointly, exclusively within the corporate limits of the city upon the streets determined to be improved. City of Corsicana v. Mills (Tex. Civ. App.) 235 S. W. 220. The special funds of county road improvement district No. 1 are by statute required to be used in payment of the cost "of constructing and maintaining * * * macadamized, graveled, or paved roads" within such road improvement district. Article 627, R. S. The statutory system of improvement of highways expressly provides that "a defined road district of a county" may include "towns, villages or municipal corporations of the county." Article 631, R. S. The streets of the city, then, become an integral part of the road district, entitled to be improved, the cost to be payable with warrants issued against such special funds of the road district. The statute does not expressly or impliedly deny authority to the county commissioners to make apportionment of a proper and reasonable portion of the special fund to be used within the corporate limits of the city upon streets, as a part of the highway, determined to be improved. The statute does grant to towns and cities the special power to control, improve, and order the improvement of any street within the corporate limits. Articles 1006–1010, R. S.; Spe-

cial Charter City of Sulphur Springs, Special Acts 1911, p. 414. In thus exercising the power given over the improvement of 'its streets the city would not be doing an act violative of the law and its charter. And if the commissioners' court voluntarily made apportionment of a proper and reasonable portion of such special fund to be used in improvement of the city streets, as an integral part of the district highway, the county commissioners would not thereby be doing an act prohibited to them. Even though the special funds in this case as apportioned to the city were in the custody of the county treasurer and were to be paid strictly in terms of the statute by warrants upon the county treasurer only when "approved by the commissioners' court of the county," still the apportionment by the county commissioners of a portion of the special fund to be used in the city limits in improvement of the streets constituted, in effect, an available resource to the city, in the meaning of the city charter for payment of the cost of improvement of the streets. Section 8 of article 29 of the city charter specially authorizes the city commissioners to make "appropriation" for the payment of the amount to be paid by "the city at large" in the street improvement "out of available funds, or resources properly applicable thereto, by bond issues or otherwise." Consequently it is thought that from the standpoint of the city charter the city commissioners did not, in making the contract in suit, fail to comply with the charter provision. Therefore the contract as made is not, in the circumstances, void as being violative of charter requirements.

[2] The second proposition submitted is predicated upon sustaining a special demurrer to that part of the answer setting up as a defense that the levy and assessment of the amount payable by appellant for the street improvement was according to "the front-foot plan," in violation of the terms of the charter in such respect. Under the terms of article 29 of the charter of the city of Sulphur Springs the commission, the governing body of the city, is specially empowered to create and establish within specially defined limits of the city improvement districts, designating them by a certain number. The commission is authorized to create an improvement district "whenever the commission shall deem it necessary to grade, fill, raise, repair, macadamize, pave, repave or otherwise improve any avenue, street or alley or portion thereof, and shall be of the opinion that certain real estate abutting on, or in the vicinity of, such improvement or improvements will be specially benefited thereby." The commission is authorized to determine and provide for the payment of the cost "of such proposed improvement or improvements" either "wholly by the owners of the real estate within such proposed

improvement district" or "in part by such owners, and in part out of the general revenue of the city or other revenues or resources that may be properly appropriated for that purpose." Section 8 has the following direction and limitation as to the amount of the cost that shall be paid solely by the owners of the real estate within such special district:

"In making assessment and levy on the property in any taxing district, to pay for local improvements, the assessment and levy shall be in proportion to the value of each parcel of property so assessed, but in no case shall the amount assessed be greater than the amount of increased value, added to the parcel of property so assessed by reason of said improvement."

Acting under the authority of the charter, the city commission by resolution adopted, created, and established within the city specially defined "improvement district No. 16." In creating the improvement district it was determined and provided in the resolution by the city commission that the improvement should consist (1) "of grading, raising, filling and paving of the hereinafter described street," being "the area known as College street"; and (2) "and installing concrete curbs and gutters on and along same." It was further resolved by the city commission that the cost of the proposed improvement be paid as follows: (1) The railway companies to pay all cost of such improvement "on the street occupied by the tracks, between the rail and track and two feet on the outside thereof."

(2) "The city shall pay all the cost of the improvement in and on said street at the intersection of other streets and alleys with the street named, and one-third of all the remaining cost of grading, raising, filling and paving of the street, except the cost of curbing in front of the respective property owners, and except further such portion as is payable by the railway companies above provided."

(3) "That the owners of the property abutting upon and adjacent to said street, as named and bounded, shall pay the whole cost of installing concrete curbs and gutters in front of their respective property, and all the remainder of said costs of said improvement, after deducting the amount specified to be paid by the city and the railway companies."

Further it is provided in the resolution:

"Said amount to be paid by said property owners and which may · be assessed against such abutting and adjacent property and its owners shall be proportioned as the frontage of each owner is to the whole frontage to be improved. Be it further resolved that the plan adopted by the commission to be used for defraying the cost of said improvement, as applied to the property owners whose property abuts and adjoins said street, shall be according to the 'front-foot plan and rule'; Provided that if the application of this rule, in the opinion of the commission, be unjust or unequal, or result in individual cases in assessment in excess of specific benefits received from such improvement, then the said city commission shall adopt such rule of apportionment as shall effect a substantial equality between said owners, considering the benefits received by and burdens imposed upon said owners and their respective property."

The actual cost of the curbing is by the terms of the charter to be assessed against appellant. The pro rata cost of the street paving is, by the terms of the charter, to be levied and assessed according to the amount of increased value of the property added by reason of the street improvement. Hence if the levy in this case, as to the cost of "the street" improvement, was not so made it would be void. City of Dallas v. Emerson et al. (Tex. Civ. App.) 36 S. W. 304. The answer alleges that—

"The city undertook to assess the purported costs of said alleged improvement, and bind the property therefor and create a liability thereon, upon the 'front-foot plan.'"

This fact as alleged, if existing, was important, in view of all the proceedings, and the appellant was entitled to prove. Therefore as a pleading the answer was not subject to demurrer. This ruling in this respect constitutes, we conclude, reversible error.

The judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

[3] It is insisted by the appellees that any error in sustaining the special demurrer to a part of appellant's answer, as determined in the original opinion, should be held as harmless error not requiring a reversal of the judgment, because the appellees recovered upon the written contract pleaded and established by the evidence beyond controversy. The question now presented was not without notice or consideration by us in our former deliberation upon the appeal. As the briefs, though, made no mention of this question, we were at the time inclined to construe the judgment, as stated in the former opinion, as a judgment against J. L. Cannon on the special assessment certificate," rather than upon the written contract signed by appellant. It being made clear now that the case as actually tried and the judgment as finally rendered was upon liability under the written contract, the judgment should be, we think, affirmed, instead of reversed and remanded, upon the grounds stated by appellees in this motion.

[4] The written contract signed by appellant and his wife reads as follows:

"The State of Texas, County of Hopkins.

"We, J. L. Cannon and his wife, Mary D. Cannon, owners of the following described property: One lot in the city of Sulphur Springs, on the south side of College St. in the M. A. Bowlin survey, being lot No. 19, block

No. 54, more fully described in a deed from J. E. Thomas to J. L. Cannon on Jan. 4, 1893, and recorded in vol. 23, page 404, Hopkins county, Texas, in consideration of the improvements including grading, excavation, paving and curbing street or roadway 27 feet wide to be made by virtue of a resolution heretofore adopted by the commission of the city of Sulphur Springs, Texas, and the contract and specifications heretofore adopted by said commission upon the completion of said improvements in front of the property and premises above . described and the acceptance thereof by the city, promise to pay, Cobb & Gregory, a firm composed of O. E. Cobb and J. A. Gregory, or their assigns, whatever sum shall be ascertained to be pro rata share of the cost of said improvements in front of said premises according to the front-foot rule under the terms of said resolution and contract and the charter of said city, not to exceed the sum of $288.10, but if the frontage of said premises shall finally exceed the amount herein stated, then the pro rata cost of improvements of said excess shall be paid for to said Cobb & Gregory, at the rate of $1.3606 per front-foot for such excess.

"The amount due hereunder shall be paid as follows, to wit: All cash at the option of the undersigned, or one-third thereof 30 days after said improvements have been completed in front of said property and accepted by said city, the balance in two equal installments on or before one and two years after such acceptance, with interest on said installments from date of such acceptance at the rate of 8 per centum per annum, payable annually, together with 10 per cent. attorney's fees thereon if not paid at maturity and placed in the hands of an attorney for collection, or suit is brought thereon, and, if default is made in the payment of any installment of principal or interest hereunder when due, then, at the option of said Cobb & Gregory, or other legal holder hereof, the whole amount unpaid shall at once become due and payable.

"And in consideration of said improvements to and upon said, premises and the fact that thereby the value of said property will be enhanced in excess of the cost of such improvements, we, the undersigned, do hereby expressly confess, admit, give, and grant unto the said Cobb & Gregory, the contractors who are to furnish the labor and material with which to construct said improvements, and their assigns, the mechanic's, builder's, contractor's and materialman's lien upon said premises to secure the full payment of the indebtedness herein mentioned; and as further security to said Cobb & Gregory and as an inducement for them to perform said work and furnish the labor and material necessary thereto, the undersigned by these presents grants, bargains, sells and conveys unto said Cobb & Gregory the above-described land, who shall have and hold the same with all and singular the hereditaments and appurtenances thereto belonging or appertaining, in trust, for the purpose of further securing the payment of the debt above described, and when said debt shall have been paid as aforesaid, then these presents shall be without force and effect.

"And we do hereby consent that the commission of said city may levy a special assessment against said property for the amount ascertained, to be the proportionate share chargeable against the same, and may issue to said Cobb & Gregory an assignable certificate for such amount payable in the manner above specified.

"It is expressly understood that this obligation is not conditioned upon the improvement of said street before all property abutting thereon, but such improvement may be omitted in front of the property of such owner or owners abutting thereon who decline to make satisfactory arrangements with the said Cobb & Gregory for the payment of his, or their, part of the cost of the same, and this obligation shall be deemed only cumulative and independent of such proceedings of the commission hereinbefore mentioned and of such provisions as the commission shall make for the pro rata cost of such improvements against the abutting property or the owners thereof.

"If such special assessment be levied upon the above-described property and the certificate above mentioned is issued therefor by said city, then any payments made on such certificate shall be apportioned as credit hereon, and shall be indorsed hereon upon request. And consent is also given that said commission may make any change or changes it may deem necessary or proper in the plans and specifications for paving the street railway track upon said street, if any, and any such change or changes shall, in no way, affect legality of any assessment or liability in any respect.

"Witness our hands this 10th day of Nov., 1916." · *

This written contract required the work to be constructed in accordance with the plans and specifications adopted by the city and set out in the contract between the city and the contractors. The only issue submitted to the jury was:

"Was the pavement in controversy constructed in accordance with the plans and specifications set out in the contract entered into by and between the city commission of Sulphur Springs and the contractors, Cobb & Gregory?"

The question being answered "Yes" by the jury on evidence to support the issue that the work was done in accordance with the contract, the appellees were legally entitled to recover upon the promise contained in the written contract admittedly executed by the appellant. The appellant could legally make a personal contract concerning the improvement in the street. Lewis v. Roach Manigan Paving Co. (Tex. Civ. App.) 184 S. W. 680.

It is noted that the judgment as rendered appears, as a clerical error, $19.33 in excess of what it should be, and to that extent should be reformed so as to reduce it to the proper amount.

The former judgment reversing and remanding is set aside, and the judgment as reformed is in all things affirmed.