## CITY OF BRECKENRIDGE v. STEPHENS COUNTY.

'No. 666.

Court of Civil Appeals of Texas. Eastland.
March 7, 1930.
Rehearing Denied April 4, 1930.

Chas. H. Clark, Jones & Brown and Lyndsay D. Hawkins, all of Breckenridge, for appellant.

Ben J. Dean, T. B. Ridgell and W. J. Arrington, all of Breckenridge, for appellee.

FUNDERBURK, J.

This suit involves the validity of a written contract between the city of Breckenridge, a municipal corporation, and the county of Stephens, dated November 23, 1926. Breckenridge was first incorporated under the commission form of government plan, with a population of over 1,000 and less than 5,000, with the powers given in R. S. 1925, art. 1163. Afterwards, by resolution, the city council adopted in lieu of its existing charter the provisions of title 28, relating to cities and towns, as authorized by R. S. 1925, art. 961. By said contract the city of Breckenridge engaged to make certain improvements upon Walker

street within the corporate limits of the city, and the county agreed to pay $20,000 (later increased to $22,300) "toward the making of said improvements." The city, in making said street improvements, acted under authority granted by chapter 9, title 28, R. S. 1925. Walker street constitutes a continuation through the city of Breckenridge of state highway No. 1, extending east from the city limits to the Palo Pinto county line, and west from the city limits to the Shackelford county line. The contract provided that the work of improvement should be done by contract to be let after advertisement for bids. The commissioners' court was to sit with the city authorities in receiving bids, and the bid accepted, as well as the contract for the work, was to be subject to its approval. The order of the commissioners' court providing for the making of the contract with the city recited that the said sum of $20,000 agreed to be paid should "be put in a separate fund to be called 'Road-Street Fund,' to be taken out of Special Road Bond Fund 'D' by the County Treasurer to fill this contract," and it directed the county clerk to issue warrants upon said special fund in compliance with the contract. The subsequent order modifying the last named order so as to increase the county's obligation to $22,300 likewise set aside the additional amount in the "Road-Street Fund and out of Special Road Bond Fund 'D.'"

Stephens county had theretofore been authorized to issue bonds for the purpose of constructing, maintaining, and operating macadamized, graveled, or paved roads and turnpikes, or in aid thereof, under provisions of chapter 3, title 22, R. S. 1925. A large amount of bonds had theretofore been issued and sold.

The commissioners' court approved the bid of L. W. Pelphrey & Co., and approved the contract made by the city with that company to do the work. That contract was dated December 31, 1926, and, among other things, obligated the contractors to give a bond to secure performance of the contract in the sum of $46,400. The bond actually made and accepted by the city was for the sum of $22,334.-78. After the making of the contract with L. W. Pelphrey & Co. at a date not definitely fixed, but before the work was begun, the governing body of the city passed an ordinance entitled, "An ordinance amending ordinances heretofore passed and contract heretofore let, relating to improvements of portions of Walker Street, and declaring an emergency." The purpose of this ordinance is suggested in a preamble reading: "Whereas, the said ordinances and proceedings heretofore taken, and the said contract do not adequately express the true understanding of the parties and do not sufficiently cover the subject matter," etc.

After the contract for the improvements was made, but before the work was actually begun, the commissioners' court undertook, on January 24, 1927, by order, to rescind and cancel the former orders providing for the making of the contract with the city. Of this action the city authorities had notice within a few days. The street improvement work was duly performed and accepted by the city as in compliance with the contract. The city made demand upon the county for payment of the said sum of $22,300, which, being refused, this suit was brought for its recovery. The case was tried before the judge, without a jury, and judgment rendered for Stephens county, from which judgment the city of Breckenridge has duly perfected appeal.

The trial judge filed findings of fact and conclusions of law. The fact findings, with some abbreviation, may be stated to be as follows: That $3,100,000 of the road bonds out of an authorized issue of $3,500,000 had been sold and applied on the construction of roads, and that there remained unsold and unissued at the time the contract in question was made $400,000 of said bonds; that at said time road bonds series D had not been sold or issued; that the county treasurer had never set aside any money out of road bond series D or otherwise, to pay the $22,300 sued for; that state highway No. 1 extends from the Palo Pinto county line to the Shackelford county line, passing through the city of Breckenridge over Walker street; that said state highway was constructed with proceeds from the sale of Stephens county road bonds with state and federal aid, according to plans and specifications prepared by the state highway commission of the state of Texas and the United States Department of Agriculture; that prior to the making of the contract in question said highway had been taken over by the highway commission of Texas for maintenance and further improvement; that at the time of the construction of the highway the corporate limits of Breckenridge extended east on Walker street to Gonzolas creek; that the improvements in question were upon a portion of East Walker street, east of Gonzolas creek, which had been taken into the corporate limits of the city after the construction of the highway and before the making of the contract involved in suit; that at the time of the construction of state highway No. 1, which runs by the courthouse of Stephens county in Breckenridge, by a joint arrangement between the city and county, the county paid for the construction of twenty feet of the width of the street, and the city paid for constructing same wider than twenty feet; twenty feet being the usual width of the highway throughout the county at the time the contract in question was made.

It was further found that the plans and specifications for the improvements in question were not submitted to or approved by the state highway engineer of the state of

Texas, nor was any advice sought or obtained from the highway department by Stephens county or the city of Breckenridge or any one else on behalf of either of them with reference to said improvements, or the expenditure of funds for the same; that Stephens county, prior to entering into the contract in question, had not advertised for bids or given any public notice of its intention or desire to enter into said contract; that, after the contract in question with L. W. Pelphrey & Co. was entered into by the plaintiff and approved by the defendant, the plaintiff then entered into a new contract with said L. W. Pelphrey & Co. without advertising and containing terms and conditions materially different from the contract approved by the defendant, and that it was under this second contract that the work in question was done; that L. W. Pelphrey & Co. did not enter into the bond in the amount and under the terms and conditions stipulated in the contract with him, which was approved by the county; that Stephens county had no supervision or control over the construction of the improvement, nor did the county have the right to accept or reject the same as a completed project; that at the time of entering into the contract there were no funds available and on hand to pay for the same nor within the immediate control of Stephens county; that on January 24, 1927, the commissioners' court entered an order on its minutes rescinding the contract and orders in reference to same, the city of Breckenridge being notified of such action within two or three days thereafter; that the city commissioners called upon the county commissioners immediately, and urged them to enter orders revoking their action in rescinding the former order and contract and that the commissioners' court refused to do this, and were threatened with suit then and there by the members of the city commission of Breckenridge; that no work had been done when such action was taken rescinding said orders, nor thereafter, until the month of August, 1927, following; that the city of Breckenridge, in making said improvements, availed itself of the rights and powers granted under article 28 (evidently title 28, chapter 9) of the Revised Civil Statutes of the state of Texas, and that the property owners abutting said improved district were assessed approximately one-half the cost.

It was further found that certain ordinances of the city of Breckenridge (being the same ordinances referred to in the preceding statement, purporting to amend the former ordinances and contract) were actually entered by the city commission in the latter part of January, 1927, after the rescission of the contract in question by the county; that the order allowing $2,300 additional was entered without advertising or any public notices of the intention of the commissioners' court to pay said money, and without competitive bids, and that there was no order or agreement of the commissioners' court approving said contract with the contractor L. W. Pelphrey & Co. upon which the work was actually done.

The trial court's judgment was based upon conclusions briefly stated to the following effect: That the commissioners' court had no power to enter into the contract and, pass the orders in question; that the contract was an unlawful delegation of discretionary powers of the court in passing upon and accepting the work, for which reason the contract was void; that, the improvements being upon a portion of a state highway, the contract for the improvements thereof without the plans and specifications having been submitted to and approved by the state highway engineer rendered same void and unenforceable; that, the improvements being to a portion of a state highway, the contract was void, for the reason that the manner of payment of the money was in violation of the statutes, for which reason the contract was void and unenforceable; that, it being contemplated that the money contracted to be spent on the improvement project was to come from the sale of bonds voted for the purpose of constructing hard surface roads in said county, and no advice having been sought or obtained from the state highway department with reference to same, said contract and said proceedings were for that reason void and unenforceable; that, the commissioners' court having rescinded its contract and given notice thereof, the city of Breckenridge was not justified in proceeding with the contract, and therefore could not recover upon the contract after completing the project, subsequent to the action of the commissioners' court and notice thereof; that the contract was likewise void and unenforceable, for the reason that no advertisement of the same was made prior to entering same; that, the city of Breckenridge having entered into a new contract after the approval of the old contract by the county, the county was not bound by any subsequent contract, and the city could not recover under the terms of the old contract; that the failure of the city to have the contractor to enter into the bond stipulated in the contract approved by the county rendered same unenforceable.

■ Among the numerous propositions urged by appellant there are some which challenge the existence of any evidence to support certain of the court's findings and others asserting that the same findings are so contrary to the preponderance of the evidence as that they ought not to be permitted to stand. It being the duty of this court to find the facts upon which we make our decision and write the opinion of the court, we deem it appropriate, first, to dispose of these questions.

Propositions 6 and 7, which challenge the finding of the trial court to the effect that

the city made a new contract after the one which the county approved was made, and propositions 8 and 9, which challenge the conclusions of the court in so far as based upon such finding, we think should be sustained. The subsequent contract did not purport to do more than to make plain and certain the terms of the previous contract, and we are unable to say that it in fact changed or varied in any material respect such former contract, or was intended to do so. There was therefore, in our opinion, no evidence and an insufficiency of evidence to support the finding challenged. .

Propositions 15 and 16, challenging the finding that there was $400,000 of the authorized bond issue unissued and unsold, and propositions 18 and 19, challenging the validity of any conclusion based upon such finding, we also sustain. The purpose of the finding was to show that no provision was made for the payment of the indebtedness attempted to be incurred by the obligation of the county under the terms of the contract to pay $22,300 to the city upon the improvements. On September 14, 1926, the commissioners' court entered an order declaring a sale of $200,000 of the bonds. The order directing such sale was rescinded January 11, 1927. It was between these two dates that the contract involved in this suit was made, and we therefore think that there was no evidence, and certainly the evidence was insufficient, to support the finding in question.

We also sustain propositions 22 and 23, and in so doing hold that, if the commissioners' court was otherwise authorized to make the contract in question—a matter hereinafter to be discussed—there was no evidence, and, at any rate, insufficient evidence, to support the finding that there were no funds available when the contract was made subject to appropriation to discharge the contract.

The propositions asserting that there was no evidence, or insufficient evidence, to support the finding that the commissioners' court did not approve the contract with L. W. Pelphrey & Co., being propositions 30 and 31, are also sustained. This finding is based upon the other finding that there was a rescission of a former contract, and our conclusion as to that matter is controlling here.

The appellant challenges many, if not all, of the conclusions of law of the trial judge, and we are of the opinion that a number of conclusions are erroneous. It is doubtful, however, if any useful purpose will be subserved in undertaking to discuss them and to state the reasons that to us warrant the contrary conclusions we have reached.

The first conclusion stated by the trial judge was: "That the Commissioners Court of Stephens County had no power to enter into the contract and pass the orders in question."

We believe this conclusion was correct, and, if so, it alone is sufficient to support the judgment in favor of Stephens county, regardless of the validity of any other conclusion upon which the trial court rendered judgment, and regardless of any of the findings of the trial court which we have not been able to sustain, as above discussed. The findings which we have been unable to approve, as well as other conclusions of law which we have indicated we were unable to adopt, may serve to indicate that the trial judge reached the conclusion with which we do agree, based upon different reasons than those which seem to us to justify the conclusion. That, however, is immaterial, we think, if in fact the conclusion is a proper one, based upon the facts of the case.

■■ We have decided that Stephens county was without any lawful authority to bind itself to appropriate any sum of money to be applied on the cost of improving a public street in the incorporated city of Breckenridge, as was attempted to be done in this case. A commissioners' court has only such authority as is expressly granted by the Constitution and laws of the state, or such as is implied from such an express grant. Whether or not a county, acting through its commissioners' court or an incorporated city or town, acting through its governing body, has or has not jurisdiction over the public highways within same to construct, improve, and maintain such highways and incur indebtedness against the municipality therefor, does not seem to be a matter of constitutional provision. This question, at least as to a county, was determined by the Supreme Court in Robbins v. Limestone County, 114 Tex. 345, 268 S. W. 915. The Constitution vests in the Legislature the power and duty to give such jurisdiction to such municipalities or other agencies as it may choose to do. The Legislature, under such grant of authority, has vested such jurisdiction as to roads comprising a system of state highways primarily in the state highway department, by the provisions of chapter 186, General Laws of 1925, page 456 (Vernon's Annotated Texas Statutes, Arts. 6674a to 6674n). By this act there was substituted for the former policy of lending "state aid" to counties a new policy of "county aid" to the state to be administered by the state highway department. "State aid," however, it appears, was not completely abolished, but by section 4 of said act (Vernon's Annotated Civil Statutes, art. 6674d) the provisions of chapter 190, General Laws of the Regular Session of the Thirty-Fifth Legislature (1917), and subsequent amendments thereto, providing for state aid to counties, was continued in force, but expressly subject to the provision that "no further improvement of said system shall be made under the direct control of the commissioners' court of any county un-

less and until the plans and specifications for said improvement have been approved by the State Highway Engineer." Said act, however, deals with state highways, and the theretofore existing power and jurisdiction of county commissioners' courts of the several counties over the public highways of the counties, other than such as were comprised in the state highway system, remained undisturbed. Such power and jurisdiction was preserved in R. S. 1925, art. 6703, and numerous other statutory provisions, including the express authority in article 6753 to provide for the improvement of public roads by contract.

It is equally clear that the jurisdiction of the municipality over the highways of an incorporated city or town, with certain exceptions, which has long existed, still remains. The said act of the Thirty-Ninth Legislature vesting jurisdiction over state highways in the highway department did not purport to take away or limit the theretofore existing jurisdiction of incorporated cities and towns over the public highways therein. It is a fair construction of said act, we think, that all of the new powers and jurisdiction it vested in the highway department were those formerly belonging to the commissioners' courts of the several counties. Prior to the passage of said act, commissioners' courts, we think, had no authority or jurisdiction to lay out and construct public highways within the limits of an incorporated city or town, with certain exceptions presently to be mentioned. More certainly they had no power to make a contribution of public road funds to be so used by the municipalities for such purpose. The Legislature having given such jurisdiction to cities and towns, as nowhere more clearly shown than by R. S. 1925, title 28, chapter 9, under which the city of Breckenridge in this case purported to act, the act of the Thirty-Ninth Legislature cannot be held to have abridged any of such authority, particularly since the statute only purports to repeal such laws or portions thereof as may be in *direct* conflict therewith, thus apparently showing an intent not to make any repeals whatever by implication.

The Supreme Court, in Norwood v. Gonzales County, 79 Tex. 218, 14 S. W. 1057, held that a commissioners' court had no authority to lay out a highway within the corporate limits of an incorporated town. It was there said that "the circumstances under which the county commissioners' court may assume authority over the streets of incorporated cities, and control them as public roads, were defined, for the first time by the act of the legislature of March 14, 1885." The act of 1885 referred to now appears as a part of R. S. 1925, art. 6703, which as to that subject reads: "Said court shall assume and have control of the streets and alleys in all cities and incorporated towns in Texas *which have no defacto*

*municipal government in the active discharge of their official duties."* (Italics ours.)

That statute now, by the clearest implication, denies such authority as to incorporated cities or towns that do have a de jure or de facto government. It therefore results that the decision in Norwood v. Gonzales County, supra, is not only not affected by article 6703, as it may apply to this case, but that statute shows a legislative construction in conformity to the Supreme Court's decision. It shows a recognition by the Legislature of the fact that it was necessary to grant the authority for it to exist, and, of course, there can be no argument that, if such was the case, the express limitations on the grant of authority would exclude anything outside the limits prescribed. If the authority in question exists, certainly it must be found in other provisions of law than article 6703.

The only other statutes we have been able to find which apparently have any bearing on the question are R. S. 1925, arts. 1146, 2356, and possibly 726.

Appellant insists that article 1146 grants such authority. But in our opinion, by the clearest implication, it denies it. Article 1146 applies to "towns and villages" incorporated under authority of chapter 11, title 28. That kind of a municipality is governed by a mayor and three aldermen. Article 1145. In the express grant of powers to such a municipality it is provided that "the board of aldermen shall: * * * (2) have and exercise *exclusive* (italics ours) control over the streets, alleys and other public places within the corporate limits; provided, that, with the consent of the board of aldermen, where streets are continuations of public roads, the commissioners' court shall have power to construct bridges and other improvements thereon which facilitate the practicability of travel on said streets." Article 1146. Clearly one purpose of the proviso was to make an exception to the grant to such municipalities of the exclusive control over streets, etc. There was one of two other possible purposes. There was a purpose to give to commissioners' courts a particular jurisdiction not theretofore possessed, or to recognize in the particular specified any such then existing jurisdiction given by other provisions of law, if any. Did such grant to the board of aldermen of exclusive control over the streets abridge any theretofore existing power of commissioners' courts? We think not, under the authority of Norwood v. Gonzales County, supra. If not, then article 1146 conferred a new power on commissioners' courts. But if, by the conferring upon the board of aldermen exclusive control over the streets, etc., a theretofore existing power of commissioners' courts was intended to be abridged, then the proviso simply means, as respects the exception, that such power should continue in the commissioners'

court. In either case, article 1146 cannot be held to add to or restrict the authority of commissioners' courts with respect to the streets of other municipalities as to which entirely different statutes control. When the provision relating to cities and towns was adopted, the new charter powers were in lieu of former powers, including those given in article 1146. Article 1146 has no bearing on the question under consideration, we think, other than by clear implication, to show that, if the authority in question exists at all, it must be by other provisions of law.

Article 2356 does have an important bearing on the question. It was enacted in 1895 (Acts 24th Leg., c. 107), and suggests at that time a legislative construction of the law to be that a commissioners' court had no authority to erect bridges within the corporate limits of a city or town, or to enter into co-operative agreements with cities or towns to do so. Otherwise, there was no reason for the enactment. The design of this provision evidently was to grant to commissioners' courts authority with reference to bridges in cities and towns other than the class of towns and villages provided for in chapter 11, title 28, as to which such authority already existed by the terms of said article 1146. But can that statute be stretched to include the character of improvements involved in this case? Had the authority given in express terms referred to streets and highways, then the authority to erect bridges and enter into such agreements could be implied. Aransas County v. Coleman-Fulton Pasture Co., 108 Tex. 216, 191 S. W. 553. Such implication would arise from the fact that a bridge is a part of a street or road. That reason, of course, is not applicable here, since in no usual or ordinary sense can it be said that a street or road is a part of a bridge. Therefore the authority of the commissioners' court to construct and improve streets in an incorporated city or town, not coming within the exception in R. S. art. 1146, with reference to a town or village, or article 6703, applying to cities and towns generally, is by implication excluded by article 2356 in limiting such authority to bridges.

Does article 726, since it certainly does not expressly grant the authority in question, do so by reasonable implication? To put the question more specifically, does the declaration that "such political subdivisions or defined districts may include towns, villages or municipal corporations of the county" imply authority to a commissioners' court to construct, improve, or maintain streets which are a continuation of public roads and highways through incorporated cities or towns, which have an acting city or town government? If so, there would be no warrant, it is believed, for holding that such authority is restricted to only such streets as form links in state highways, or public roads of a county. If the authority exists at all, it would exist as to any street of such city or town of which the commissioners' court may deem it advisable to take control. The provision of the statute quoted is an entirely appropriate one if only its purpose was to make certain that such incorporations were not to be excluded in defining road districts. Are we to ascribe to the Legislature the intent by such provision to repeal by implication whole chapters and articles of the statutes which, by their terms, with the exceptions noted, vested exclusive jurisdiction over such streets in other governmental agencies? The elementary principle that repeals by implication are not favored would seem to compel a negative answer. Nor we think, with the exception of Smith v. Cathey (Tex. Civ. App.) 226 S. W. 158, has it ever been so held in any case where the point was squarely presented and necessary to be decided. In Cannon v. Healy Construction Co., 242 S. W. 526, the Texarkana Court of Civil Appeals seems to have expressed the view that the very fact that road districts were authorized to include incorporated cities and towns implies authority to construct highways therein. But to us it seems an all-sufficient answer to say that, when Norwood v. Gonzales County, supra, was decided, and at all times prior to the enactment of said article 726, in 1907, incorporated cities and towns were parts of counties wherein taxes were levied, assessed, and collected upon the property in such towns and cities, for the purpose, among other things, of laying out, constructing, and maintaining the public roads and highways of a county, and yet, subject to the exceptions already noted, the commissioners' courts were without authority to lay out, construct, or maintain the highways of such municipal corporations.

If there was ever any basis for an argument that article 726, by implication, repealed all statutes giving exclusive jurisdiction over streets of incorporated cities and towns to such cities and towns, and vested same in commissioners' courts, it was completely removed when, in 1911 and again in 1925, in the revision of the civil statutes, all of the old statutes vesting such jurisdiction in the governing bodies of cities and towns were re-enacted with said article 726 (article 627, Rev. St. 1911).

The Texarkana court had no occasion to go extensively into the question, since it is very doubtful if a decision of such question was material to the proper determination of the question before the court. In City of Corsicana v. Mills (Tex. Civ. App.) 235 S. W. 220, the only authority cited in Cannon v. Healy Construction Company, supra, outside of the statutes in question and the opinions of the Attorney General, no such question was presented for decision or decided.

In Smith v. Cathey, 226 S. W. 158, the Dallas Court of Civil Appeals sustained the authority of a commissioners' court to pave a street in an incorporated city. The decision apparently is based alone upon the court's construction of Vernon Sayles' Texas Civil Statutes 1914, art. 2241, subd. 6 (R. S. 1925, art. 2351, subd. 6), State v. Jones, 18 Tex. 874, and opinions of the Attorney General. Subdivision 6 gives to the commissioners' court jurisdiction "to exercise general control and superintendence over all roads, highways, ferries and bridges in their counties." There are, it seems to us, at least two good reasons why that statute cannot be held to confer jurisdiction over the streets of an incorporated city or town. In the first place, it does not purport to do so. The mention of roads, highways, ferries, and bridges would by implication exclude streets. As held in Williams v. Carroll (Tex. Civ. App.) 182 S. W. 29, 30, " 'street' generally means a passageway within the bounds of a municipal corporation, while 'road' means a county highway forming a communication between the city limits of one city or town and the city limits of another city or town," and, while a street is a highway, it is not necessarily true that a highway is a street. In the second place, if roads and highways as used in the statute were terms ordinarily including streets or highways of a city, the statutes vesting in cities and towns exclusive jurisdiction over streets and highways would operate as special provisions, and under an elementary rule of construction thereby exclude jurisdiction of the commissioners' courts. The part of the opinion in State v. Jones, supra, which seems to lend some support to the holding in Smith v. Cathey may have been correct under the Constitution and laws that were in force at the time of that decision in 1857. Whether correct or not, it was purely dicta in that case and used merely as an argument in answer to the contention that, unless the county court had jurisdiction, then, upon the failure to act of city authorities, there would be no responsible agency for keeping the streets in repair. In 1885 the Legislature, as has already been pointed out, deemed it necessary to give commissioners' courts jurisdiction in towns and villages where there was no active de facto government; and the theory that there is a residuary jurisdiction in commissioners' courts that may be exercised when the city government fails or acquiesces is contrary to the decision of the Supreme Court in Norwood v. Gonzales County, supra.

The opinion of the Attorney General referred to rather assumes than decides the point we have deemed controlling; namely, the existence or not of authority in the commissioners' court. The burden of the opinion is to show there is no necessary prohibition against the commissioners' court improving streets. It seems to be taken for granted that, in the absence of such prohibition, the consent of the city authorities removes all obstacles. We have found it necessary to look for the authority in question in the Constitution and laws, keeping in mind that the commissioners' court is hedged about with the limitations pointed out by the Supreme Court in, for instance, Bland v. Orr, 90 Tex. 492, 39 S. W. 558, and Mills County v. Lampasas County, 90 Tex. 603, 40 S. W. 403, wherein it is shown that grants of authority must be specific and definite, and that the powers of a commissioners' court are not to be likened to those ordinarily conferred upon the directors of a private corporation. As we view it, if the commissioners' court is without authority, the want of authority cannot be affected by consent any more than want of jurisdiction of a court or other tribunal can be so supplied. In fact, authority and jurisdiction, as terms applicable to the question under consideration, are synonymous. Looking then to the Constitution and laws as the only source of the authority in question, the Constitution is eliminated as such source under the decision of the Supreme Court in Robbins v. Limestone County, supra. An examination of the statutes shows no express grant of authority. The statutes need be further examined only to determine if the authority may be implied from authority expressly granted or duties imposed. But, as already shown, the review of all the statutes that appear to be applicable not only does not justify the inference of the existence of such authority, but each and every one of such statutes carry the very clearest implication to the contrary. If the public welfare requires that such authority exists, then the duty of supplying it is wholly with the Legislature. Exercising our own function to determine only whether or not it exists, we have been able to reach no other conclusion than that it does not. In the absence of such authority, the contract in question was void.

The judgment of the trial court will therefore be affirmed, and it is accordingly so ordered.

HICKMAN, C. J.

Ordinarily, I do not deem it advisable to write in a case in which I concur in the judgment recommended in the opinion of my associates. But the importance of the issues involved in this case, and the far-reaching consequences of the application of the reasons assigned by my associates for affirming this judgment, make it my duty, as I conceive it, to express briefly my views in regard to the grounds upon which the judgment of the trial court should be affirmed.

The opinion of the majority, as I understand it, rests upon the conclusion that, under the statutes, the commissioners' court has no authority, even with the consent of a city, to

expend any money under any character of contract in the construction or maintenance of a street that forms a connecting line between two sections of a public road or highway.

My view of this question is this: Granting that the construction given the statutes by my associates is reasonable and logical, and even though it is the one which should have heretofore been adopted, we are not, I think, at liberty to adopt that construction at this time, for the reason that the question has been heretofore foreclosed. The opinion of the majority is admittedly in direct conflict with the opinion in the case of Smith v. Cathey (Tex. Civ. App.) 226 S. W. 158. It seems to be in conflict with Cannon v. Healy Construction Company (Tex. Civ. App.) 242 S. W. 526 (error refused), but expresses a doubt as to its conflict with that case. It is further in conflict with the language of the Supreme Court in the case of State v. Jones, 18 Tex. 874. It is also in conflict with the opinion of the Attorney General's department of this state. In an opinion dated February 2d, 1915, rendered by the Attorney General's department (See Report and Opinions of Attorney General, 1914–1916, p. 728), the county attorney of Tarrant county was advised that, with the consent of city councils, commissioners' courts might construct or co-operate in constructing roads through incorporated towns or cities. Opinions by the Attorney General's department are always persuasive. Such opinions are highly persuasive when they pertain to the duties of state or county officers.

It is a matter of common knowledge that the practice of county commissioners has been to expend money in constructing highways through incorporated towns and cities in order to connect up the public roads and highways. The record before us in the instant case discloses that the streets which were improved by virtue of the contract involved in this case were originally constructed and paved through the city of Breckenridge by Stephens county, with state and federal aid, the city constructing all of the street in excess of a width of twenty feet. The Legislature, with knowledge of the construction of the general statutes with reference to powers of commissioners' courts, not only has failed to amend same, but has re-enacted them at each recurring revision. These considerations lead me to the conclusion that a different construction and interpretation should not now be placed thereon, particularly in view of the obvious consequences thereof.

It is my opinion that the judgment of the trial court should be upheld and affirmed upon the grounds set forth in appellee's counter propositions 1, 2, 3, 9, and 12. Some of the other counter propositions appear to have

merit, but I have not carefully considered them.

For the reasons indicated, I concur in the judgment recommended in the opinion of the majority.