

# OFFICE OF
# THE ATTORNEY GENERAL
## AUSTIN, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

Mar. 19, 1947

Hon. Clayton Bray
County Attorney
Sutton County
Sonora, Texas

Opinion No. V-89

Re: Authority of the County as
agent for the State Highway
Department to pay for con-
demnation awards for city
property and a related mat-
ter.

Dear Mr. Bray:

Your request for an opinion of this Department is sub-
stantially as follows:

"When the State Highway Department has desig-
nated a route through an incorporated city of less
than 5,000, having an active city government, does
the County as agency for the condemnation in behalf
of the Highway Department have to pay the condem-
nation award to the city property owners affected?

"The city had previously agreed informally to
share the cost of condemnation within the city lim-
its; now, the city pleads lack of funds for such pro-
ject.

"I am familiar with the proposition that the
County may, by agreement with the city, maintain
a county road within the city limits but my prob-
lem is, as stated above, whether the County can
be compelled to pay for the condemnation awards
within the city limits on a designated State High-
way Route, so routed and designated by the State
Highway Department.

"Obviously, the damages under condemnation
in a city would be greater where lots and homes
are concerned than in the county proper where only
acreage is involved.

"Also, does condemnation contemplate as com-
pensable damage the expense of drilling a water
well, moving a house, repairing incidental damage

caused to the house by moving, and extending and
reconnecting plumbing, and such related items of
expense?"

The Supreme Court, in Norwood vs. Gonzales County,
14 S. W. 1057, held that a Commissioners' Court had no authority
to lay out a highway within the corporate limits of an incorporated
town. It was there said that "the circumstances under which a
County Commissioners' Court may assume authority over the
streets of incorporated cities, and control them as public roads,
were defined, for the first time by the Act of the Legislature of
March 14, 1885." The Act of 1885 referred to now appears as a
part of the Revised Statutes of 1925, Article 6703, which as to that
subject reads:

"Said Court shall assume and have control of
the streets and alleys in all cities and incorporated
towns in Texas which have no de facto municipal
government in the active discharge of their official
duties."

The above statute, by the clearest implication, denies
such authority as to incorporated cities and towns that do have a
de jure or de facto government. It therefore results that the deci-
sion in Norwood v. Gonzales County, supra, is not only affected by
Article 6703, as it may apply to this case, but that statute shows
a legislative construction in conformity with the Supreme Court's
decision. (City of Breckenridge v. Stephens County, 26 S. W. (2d)
405.) The Stephens County case was later reversed by the Supreme
Court (40 S. W. (2d) 43) but in so doing, the Court did not overrule
the Norwood case as is clearly shown from the following quotation:

"Of course, the town or city governing board
primarily has paramount jurisdiction of the streets
and highways thereof, and the Commissioners' Court
would have no authority to improve streets or high-
ways within municipalities in conflict with the juris-
diction of the city to improve the same."

The Stephens County case related to a street constituting
a State highway and was decided after the transfer of the jurisdic-
tion of Commissioners' Courts to the Highway Commission, as to
State highways, under provisions of said Article 6673 and the above
quoted excerpts certainly lend no support to the proposition that it
transferred all jurisdiction of city authorities over State highways
in the corporate limits of a city.

Article 6673, V.A.C.S., provides in part as follows:

". . . The Commission is authorized to take over and maintain the various State highways in Texas, and the counties through which said highways shall pass shall be free from any costs, expense, or supervision of such highways . . ."

In the case of Gabbert v. City of Brownwood, 176 S. W. (2d) 344 (writ of error refused) a suit was initiated to recover for personal injuries as a result of alleged negligence on the part of the City of Brownwood. The case raised the question for decision as to whether, under the pleadings and the uncontroverted evidence, the City of Brownwood had jurisdiction of this particular section of the State Highway within its limits where the accident occurred, or whether the transfer of jurisdiction over State highways in a county from the County Commissioners' Court of such County to the State Highway Commission effected likewise a transfer of the jurisdiction of the cities and towns in such counties over State highways in such cities and towns to the State Highway Department. Judge Funderburk, speaking for the Court, said:

"Viewing the subject matter as jurisdiction, there is a clear implication in Article 6673 that the jurisdiction which it transferred to the State Highway Commission was the jurisdiction which Commissioners' Courts theretofore had over such parts of state highways as were within the several counties. Such implication results from the clause reading 'and the counties through which said highways pass shall be free from any cost, expense or supervision of such highways.' Why express the relief of counties from 'any cost, expense or supervision' and say nothing of the cost, expense and supervision by cities and towns, if the intended transfer was to affect both alike? Is not the conclusion inescapable that the only jurisdiction transferred was that theretofore possessed by county commissioners' courts? Under familiar principles the Legislature must be presumed to have been cognizant of the existing decisions and must have known that a transfer of only such jurisdiction as commissioners' courts had would not imply the transfer of such jurisdiction as cities and towns had. Therefore, we think, charter provisions or other statutes giving cities and towns jurisdiction over highways therein remained special provisions, while Article 6673, although special in its relation to Article 6703, was general as to such charter provisions and said other statutes. In this view the Legislature, while it could have transferred

jurisdiction of cities and towns over particular
highways therein to the State Highway Depart-
ment, nevertheless, neither expressed nor im-
plied any intention to do so."

Article 6673-b of Vernon's Annotated Civil Statutes, pro-
vides as follows:

"The State Highway Commission is hereby
authorized and empowered, in its discretion, to
enter into contracts or agreements with the gov-
erning bodies of incorporated cities, towns, and
villages, whether incorporated under the General
Laws, providing for the location, relocation, con-
struction, reconstruction, maintenance, control,
supervision, and regulation of designated State
highways within or through the corporate limits
of such incorporated cities, towns, and villages,
and determining and fixing the respective liabili-
ties or responsibilities of the parties resulting
therefrom; and such incorporated cities, towns,
and villages are hereby authorized and empowered,
through the governing bodies of such cities, town,
and villages to enter into such contracts or agree-
ments with the State Highway Commission."

Article 6674n, Vernon's Annotated Civil Statutes, pro-
vides as follows:

"Whenever, in the judgment of the State High-
way Commission, the use or acquisition of any land
for road, right of way purposes, timber, earth,
stone, gravel or other material, necessary or con-
venient to any road to be constructed, reconstruct-
ed, maintained, widened, straightened or lengthened,
or land not exceeding one hundred (100) feet in width
for stream bed diversion in connection with the lo-
cating, relocating or construction of a designated
State Highway by the State Highway Commission, the
same may be acquired by purchase or condemnation
by the County Commissioners Court. Provided that
the County in which the State Highway is located
may pay for same out of the County Road and Bridge
Fund, or any available county funds.

"Any Commissioners Court is hereby author-
ized to secure by purchase or by condemnation on
behalf of the State of Texas, any new or wider right
of way or land not exceeding one hundred (100) feet
in width for stream bed diversion in connection with

the locating, relocating or construction of a designated State Highway, or land or lands for material or borrow pits, to be used in the construction, reconstruction or maintenance of State Highways and to pay for the same out of the County Road and Bridge Fund, or out of any special road funds or any available county funds. The State Highway Commission shall be charged with the duty of furnishing to the County Commissioners Court the plats or field notes of such right of way or land and the description of such materials as may be required, after which the Commissioners Court may, and is hereby authorized to purchase or condemn the same, with title to the State of Texas, in accordance with such field notes. Provided that in the event of condemnation by the County the procedure shall be the same as that set out in Title 52, Articles 3264 to 3271, inclusive, Revised Civil Statutes of Texas, of 1925. Provided that if the County Commissioners Court of any County in which such right of way is, in the judgment of the State Highway Commission, necessary for the construction of a part of a designated State Highway shall fail or refuse to secure by purchase or by condemnation for or on behalf of the State of Texas, such right of way or part thereof, immediately and as speedily as possible, under said Title 52, Articles 3264 to 3271, inclusive, Revised Civil Statutes of Texas, of 1925, after being served with a copy of an order of the State Highway Commission identifying by field notes, the part of the Highway necessary for the construction of such designated State Highway and requesting such County Commissioners Court to secure same, then and in such event and within ten (10) days after the service of such notice, said State Highway Commission shall direct the Attorney General of Texas, to institute condemnation proceedings in the name of the State of Texas for the purpose of securing such right of way. The right of eminent domain to condemn any part of a right of way for a State designated highway, under the conditions herein set out is hereby conferred on the State Highway Commission and the jurisdiction for the exercise of such right is hereby conferred on the County Court of Travis County. Such condemnation proceedings shall be instituted by the Attorney General by filing a statement for condemnation with the County Judge of Travis County, Texas, and the venue of such proceeding shall be in Travis County, Texas, and jurisdiction and authority

to appoint three (3) disinterested freeholders of
Travis County, Texas, as Commissioners is here-
by conferred upon the County Judge of Travis
County, Texas, and otherwise such condemnation
shall be according to the provision of said Title 52,
Articles 3264 to 3271, inclusive, Revised Civil
Statutes of Texas, of 1925."

The opinion in Gabbert, et al v. City of Brownwood, su-
pra, further states:

"The conclusion seems to us to be inescapable
that the effect of Article 6673 was to confer upon
the State Highway Department only the former
jurisdiction of county commissioners' courts, which
although in terms broad enough to include the for-
mer jurisdiction of cities and towns, did not do so,
for the very same reason they were not included in
the jurisdiction of county commissioners' courts
which said Article transferred to the Highway De-
partment.

"More effective than Article 6673b as indi-
cating legislative construction of Article 6673 is
Article 6674n authorizing commissioners' courts
at county expense, but only as agents of the State
Highway Department, to condemn lands and mate-
rials for 'construction, reconstruction, or mainte-
nance of State Highways.' Will it be contended that
this empowers county commissioners' courts to
condemn lands and materials in the city limits of
an incorporated city or town for state highway pur-
poses? Why should the power be exercised at coun-
ty expense rather than city or town expense?"

Article 1016 of Vernon's Annotated Civil Statutes, pro-
vides as follows:

"Any incorporated city or town containing not
more than five thousand population in this State
shall have the exclusive control and power over
the streets, alleys, and public grounds and high-
ways of the city, and to abate and remove encroach-
ments or obstructions thereon; to open, alter, wid-
en, extend, establish, regulate, grade, clean and
otherwise improve said streets; to put drains or
sewers therein, and prevent incumbering thereof
in any manner, and to protect same from encroach-
ment or injury; and to regulate and alter the grade

of premises; to require the filling up and raising
of same; and such city council shall also have
power to alter or vacate the alley in any block of
ground in the city upon written application of the
owner of the block, or if there be more than one
owner of such block, then upon the written appli-
cation of all owners thereof uniting in such appli-
cation; such alley so vacated shall thereupon re-
vert to and become the property of the owner of
the block of which it was a part, or if more than
one, then to the owners of the adjoining lots there-
in, each extending to the center of the alley so
vacated."

In the case of Adams,et al v. Rockwall County (Comm.
App.) 280 S. W. 759, it was held that the County of Rockwall did
not have the power to condemn land for road purposes within the
corporate limits of the town of Royse. In discussing the above
quoted Article, the Court stated as follows:

"There does not appear to be an ambiguity in
the language employed by the Legislature to ex-
press its intent as to what agency should exercise
control over the highways within incorporated
cities and towns, or as to the exclusive nature of
that control."

In the case of Benat v. Dallas County, 266 S. W. 539,
the Court stated:

"Except in cases coming within the scope of
some general or special statute in which authority
is explicitly conferred, counties are without au-
thority to lay out or control streets and highways
of the incorporated cities and towns, or to have
property condemned for such purposes."

The Court was of the opinion that the Commissioners'
Court of Dallas County had no power to take land by eminent do-
main proceedings within an incorporated city and their filing of
a petition to condemn land did not confer jurisdiction. If they
have no power to condemn land within the cities, clearly, they
could not be compelled to pay for such condemnation awards as
agents of the State Highway Department. Therefore, it is the
opinion of this Department that a county as agent for the State
Highway Department may not be compelled to pay the condem-
nation award to a city property owner whose property has been
condemned for State highway purposes.

In view of the foregoing answer, a discussion of your question of compensable damages relating to the drilling of a water well, moving a house and repairing incidental damage is not deemed necessary.

### SUMMARY

Inasmuch as a county may not condemn land within an incorporated city or town, by the same token, a county may not be compelled, as agent for the State Highway Department, to pay the condemnation award to city property owners whose land is condemned. (Articles 6673 and 6703, R.C. S. 1925; Gabbert, et al v. City of Brownwood, 176 S. W. (2d) 344; City of Breckenridge v. Stephens County, 26 S. W. (2d) 405; and Benat v. Dallas County, 266 S. W. 539.)

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By _Burnell Waldrep_
Burnell Waldrep
Assistant

BW:djm:sl

APPROVED MAR 20 1947

_Price Daniel_
ATTORNEY GENERAL OF TEXAS